## BLAKE DUPREE, RECEIVER, v. HENRY C. ALEXANDER.

### Decided April 29, 1902.

**1.—Master and Servant—Duty of Inspection—Assumed Risks—Electric Pole.**

Evidence held not to show such duty of inspection on the part of a servant as would cast on him the risk of the danger resulting from an electric pole he was using being rotten beneath the ground.

**2.—Same—Master Not Excused from Inspection.**

The duty of inspection is on the master, and where he seeks to excuse himself from it he must show that the servant, by his contract of employment, was required to perform such duty, and that the same was one of the primary objects of the employment.

**3.—Charge of Court—Physical Examination.**

It was not error for the court to charge, in an action for personal injuries, that it was the legal right of plaintiff to refuse to submit his person to an examination by physicians selected by defendant; and if defendant desired to have the court explain to the jury for what purpose they could consider evidence of plaintiff's refusal to submit to such examination, he should have requested such charge.

**4.—Master and Servant—Contributory Negligence—Evidence.**

See evidence held not sufficient to raise the issue of contributory negligence on the part of the servant in using an electric pole in the discharge of his duty.

**5.—Same—Pleading by Defendant.**

The defendant is not required to plead contributory negligence where the evidence adduced by plaintiff in the development of his case raises that issue, but otherwise the defendant can not introduce proof of independent substantial facts tending to show contributory negligence without pleading such facts.

**6.—Same—Leave to Amend—Surprise.**

Where the evidence offered by defendant to show contributory negligence, and which was rejected as not being within the pleadings, was insufficient to

raise that issue, it was not error for the court to refuse defendant leave to withdraw his announcement on the ground of surprise and to file a trial amendment charging such negligence as the rejected evidence would show.

Appeal from Harris. Tried below before Hon. William H. Wilson.

*Hutcheson, Campbell & Hutcheson,* for appellant.

*Lovejoy & Malevinsky,* for appellee.

PLEASANTS, Associate Justice.—The statement of the nature and result of this suit contained in appellant's brief is as follows: The appellee, Henry G. Alexander, brought this suit in the District Court of Harris County, Texas, against the Citizens Electric Light and Power Company and Blake Dupree, as receiver of that company, to recover damages for injuries alleged to have been sustained by plaintiff while in the employ of defendants, by reason of the negligence and carelessness of defendants, their servants, agents, and employes. The petition alleged the appointment and qualification of the receiver, and charged that the plaintiff was a competent and capable lineman, and that he was at work for defendants in that capacity on or about February 15, 1901, on one of their poles, said pole being about twenty-five feet in height; that while he was on said pole, he was directed by the foreman to cut some wires attached to and strung upon it, and while in the performance of said duty the pole broke and threw him violently to the ground, causing him great pain and serious injuries; that said injuries were directly and proximately caused by the negligence of defendants, their servants and agents and employes, in that (1) they failed to use ordinary care in the inspection of the pole; (2) they were negligent and careless in maintaining said pole in a defective and dangerous condition, and that the bottom of said pole, under ground, was rotten and wholly insufficient for the purpose for which it was employed.

To this petition the receiver filed a general demurrer and general denial, and pleaded specially: (1) That if the plaintiff was injured, the injury was occasioned by a risk ordinarily incident to his employment as a lineman and therefore assumed by him. (2) That if plaintiff was injured his injuries were due and traceable to the want of proper care on his part in the discharge of his labors, in this, that it was the plaintiff's duty to know the defects in the pole, if any there were, and if he climbed it without making the necessary inspection he was guilty of contributory negligence.

On October 23, 1901, this cause came on to be heard, and the suit having been dismissed as to the Citizens Electric Light and Power Company, resulted in a verdict and judgment against Blake Dupree, receiver, for $900.

The facts disclosed by the record are as follows: Appellee was employed by appellant as a lineman, and in that capacity was required to

perform all work that was necessary to be done on the top of or about the poles of appellant in the taking down and hanging of wires. He was only employed to work with wires, but such employment included the climbing of poles and all work necessary in the proper handling of wires. At the time he was injured he with other employes of appellant were engaged in the work of rearranging appellant's lines at the junction of McKinney avenue and Brazos street, in the city of Houston. Appellant's foreman, J. H. Brittigan, who was directing the work, ordered appellee to ascend the pole on which the arc circuit on said streets were fastened and to cut everything off. There was an arc circuit and two guy wires attached to this pole. When he got to the pole he kicked it two or three times to see if it was solid and it seemed to be perfectly sound. He went up the pole and cut the wires as he had been directed by the foreman, and as he cut the second circuit wire the pole broke and fell with him, and he thereby received the injuries complained of. The pole broke from eight to twelve inches under the ground. It was rotten entirely through at the place of the break, but was perfectly sound above the ground. If the pole had not been rotten it would not have fallen.

Appellee was an experienced lineman; had worked in that capacity for four or five years, and had been working for the appellant for three weeks prior to the accident. He had before this taken lines off of old poles and put them on new ones, had repaired old lines and worked on all kinds of poles and knew that poles in the ground would rot. He did not know how long this pole had been there. It did not look like a new pole, but was apparently in good condition. It was a red cedar pole of at least an average size, being about five inches in diameter at the top and twelve inches at the bottom. It was appellee's habit as a lineman to kick old poles to test their soundness before going upon them. He knew that poles which have been up a short time are safer to handle wires on than poles which had been in use for a longer time. He did not discover any unsoundness in this pole when he kicked it nor while climbing up to the crossarm on which the wires were fastened; it seemed perfectly firm and steady. After reaching the crossarm he first cut the circuit wire on one side, then one of the guy wires, and then the circuit wire on the other side. The pole fell after he cut the second circuit wire. The guy wires would probably have held the pole up if one of them had not been cut. He could have cut both guy wires from the ground, but cut them from the top because the foreman ordered him to do so. This pole had no rot above the ground and was perfectly sound except below the ground. That portion of the pole below the ground was nothing but rotten wood and the pole was only held up by the wires. He could have found out that the pole was rotten before going on it by digging down by its side. He did not know whether this pole had ever been examined, had never heard of the appellant sending anyone to examine this or any of its poles. The appellant had never

furnished him with any tools with which to examine poles below the ground, and he had never asked for any.

Several physicians testified that they had examined the appellee and were of the opinion that he was injured as alleged in his petition. It was also shown that appellee refused to allow a physician selected by the appellant to be present when he was examined by his physicians. One witness testified for appellant that he assisted in putting up the pole in question; that it had been in the ground six years, and that it was perfectly sound when it was put up. Several witnesses for appellant testified that red cedar poles were the most durable that could be used, and that the average life of a pole of this kind was from ten to twenty-five years. One of these witnesses for the appellant further testified that all prudent linemen would inspect for themselves to see whether old poles which they were ordered to dismantle were rotten; that he would do this if he was directed to take down an old pole; that he always did this; that he had some experience in taking down old lines and putting up new ones, and had once seen a new pole broken by the strain of the wire stretched on it when the wire on the opposite side slipped or broke; that the catapult effect on a pole which supports wires pulling in opposite directions is very considerable when one of the wires is suddenly cut. It takes a strong pole to stand the strain under such circumstances. The pole that he had seen broken in this way was not a large pole, was rather small, but was new.

Appellant's foreman testified that he directed the appellee to go up the pole and cut the wires off; that he was busy giving instructions to other men and did not notice how appellee climbed the pole nor how he removed the wires. The first he knew that anything was wrong was when he heard the noise of the breaking, and turning around he saw appellee fall. Before appellee climbed the pole this witness kicked it to see if he could discover any rottenness. It seemed to be perfectly sound. He thinks appellee shook the pole before he started up to see if it would give way. No other examination of the pole was made. He did not see what appellee did after he went up on the pole. Witness and all the other linemen knew that appellant never had a special set of men to inspect the poles that were being taken down by the linemen. It was the duty of the lineman to inspect poles. He had always inspected the poles for himself and all the others had done the same. There was nothing about the appearance of this pole to indicate that it was not perfectly sound. He was the acting foreman in charge of the work at the time of the accident, and appellee was working under him and had to obey his orders. He did not instruct the appellee how to take the wires down; merely told him to cut the wires off the pole and thought he would, as an experienced lineman, understand how to do it. The examination given this pole by appellee and witness was all that had been given any of the poles so far as he knew. He did not examine below the ground. He could have determined whether the pole was rotten below the ground by digging down, but did not make such examination. If

appellant had any set of men whose duty it was to inspect its poles he would have known it, because he had been with appellant off and on for the past five years. When he told appellee to "cut the wires" any lineman would have understood that he did not mean to cut each wire, but that he simply meant to take the wires off the pole.

Appellant's first and second assignments predicate error upon the action of the court in refusing to instruct the jury to return a verdict for the defendant and in overruling the motion for a new trial on the ground that the evidence is insufficient to support the verdict, in that the undisputed evidence in the case shows the defendant owed plaintiff no duty of inspection, and that if such duty rested upon the defendant it was faithfully discharged.

The general rule of law that imposes upon the master the duty of using reasonable care to provide the servant with reasonably safe appliances and a reasonably safe place in which to work, and whenever in the fulfillment of this duty an inspection is necessary places the duty of such inspection upon the master and not the servant, is not questioned by the appellant, but it is contended that the evidence in this case shows that it was a part of appellee's duty under his employment to inspect the poles upon which he was working, and that he therefore assumed the risk of their breaking and falling from any defect whether patent or concealed. We do not think this contention can be sustained. The evidence shows that appellee was employed in the capacity of lineman, and that his duties were connected only with the handling of wires. He was not employed as an inspector of poles, and the erection or taking down of poles was not a part of the duties of his employment. He was required by law to take notice of any obvious defect in any pole upon which he might be called upon to climb in the discharge of the duties of his employment, but he was not required to inspect the pole for latent defects. There is no evidence in the record which would justify the conclusion that it was his duty under his contract of employment to make such inspection. He was furnished with no tools or appliances with which to make an inspection, and was never required or directed by the appellant to inspect any of its poles. The appellant could only relieve itself from the duty of inspection which it owed to appellee by showing that under his contract of employment that duty was devolved upon him as a primary duty. We do not mean to hold that the position of lineman and inspector might not be filled by the same person, but when the master seeks to relieve himself of the general duty of inspection which he owes to his servant, he must show that by his contract of employment the servant was required to perform such duty, and that same was one of the primary objects and purposes of the employment. Railway v. Butchek, 3 Texas Ct. Rep., 955; Railway v. Lindsey, 65 S. W. Rep., 669; San Antonio Edison Co. v. Dixon, 42 S. W. Rep., 1010; Railway v. Crowder, 55 S. W. Rep., 381; Railway v. Darby, 67 S. W. Rep., 446.

The evidence in this case merely shows that the appellant has never

discharged its duty of inspecting its poles; had no system of inspection and no persons employed whose special duty it was to make such inspection, but relied upon its linemen to perform that duty for themselves.

The appellee had been in appellant's employment for only a few weeks, and it is not shown that he knew that the appellant had never inspected its poles or that it left their inspection solely to the linemen to be performed or not as they might elect. We think under this evidence that appellee when he went upon the pole in question had the right to presume that the appellant had performed its duty of inspection and that the pole was safe, and that he did not assume the risk of its being rotten below the ground. The issue as to whether or not, under the evidence, the failure of appellant to inspect the pole in question and to discover its defective condition was negligence, was a question for the jury. We think the finding by the jury that appellant was guilty of negligence is sustained by the evidence and should not be disturbed.

The third assignment complains of the charge of the court in that it imposes the duty of inspection upon the appellant, and not upon the appellee, and the fourth assignment predicates error upon the refusal of the trial court to give the jury the following special instruction:

"If you believe from the evidence that defendant company had no regular force of inspectors, but that the linemen of the company, such as this plaintiff, in working on and about the poles of the company, performed the duty of inspection as part of their employment, the company has discharged its duty of inspection to the plaintiff, and if any injury occurred to the plaintiff, it occurred from a risk assumed by him under his employment, and if you so find, you will return your verdict for the defendant."

Our conclusion upon the question raised by the first and second assignment is decisive of the question presented by these assignments. The court correctly charged the jury under the evidence in this case that the duty of inspection was upon appellant, and the special charge requested by the appellant is not in our opinion the law of this case, and was properly refused.

The fifth and sixth assignments attack the paragraph in the charge of the court in which the jury are told that it was the legal right of appellee to refuse to submit his person to an examination by physicians selected by the appellant.

We think this charge is correct as a proposition of law. Appellee had the right to have the jury informed of his legal rights upon every issue raised by the evidence, and if the appellant desired to have the court explain to the jury for what purpose they might consider the evidence as to appellee's refusal to submit to such examination, he should have requested such instruction.

The seventh and eighth assignments complain of the charge of the court in instructing the jury that the appellant not having pleaded

contributory negligence on the part of the appellee in the manner in which he cut the wires from the pole, the issue of negligence on appellee's part in cutting said wires was not in the case and should not be considered by the jury, and in refusing to give the following special charge requested by the appellant:

"If you believe from the evidence that the plaintiff, in undertaking to take the wires off of the pole, upon which he alleges he received his injuries, did not act prudently in doing so, that is, did not act as a reasonably prudent person under the same or similar circumstances would have done in taking the wires off of said pole, and his injuries were occasioned by want of proper care on his part in taking the wires off said pole, and but for want of such proper care he would not have been injured, you will return your verdict for the defendant."

We are of the opinion that the evidence does not raise the issue of contributory negligence on the part of appellee. The jury could not have found from the evidence that the appellee was guilty of any negligence which directly contributed to his injury. He cut the wires from the pole as directed by the foreman, and if we concede that he misconceived the order of the foreman and did not remove the wires in the proper manner, there is no evidence to support a finding that the manner in which the wires were cut caused the pole to fall or that it was negligence to so cut them. The evidence of appellant's witnesses is to the effect that a rotten or small pole might be broken by suddenly cutting one of the wires on an arc circuit and thus exposing the pole to the catapult effect caused by the strain produced by the tension of the wire on the opposite side of the pole from the one which had been cut. That the pole which fell with plaintiff was not broken by cutting the circuit wire is conclusively shown by the fact that it did not break after the first wire was cut and when the strain was on one side, but only after both circuit wires and one of the guy wires had been cut. If the pole had been broken by the rebound caused by the cutting of the first wire appellee would have known it, and he testifies that it did not break until after he had cut all of the circuit wires and one of the guy wires. As before stated, appellee had the right to presume that the pole was sound, and there is no evidence to sustain the contention that a careful and prudent man would not have cut the wires from a sound pole of the size of this pole just as appellee cut them. The testimony offered by appellant to show that the manner in which appellee cut the wires from the pole was not the proper way in which to remove said wires, taken in connection with the other evidence in the case, was insufficient to raise the issue of contributory negligence on the part of appellee, and the court did not err in refusing to admit such testimony.

The ninth and tenth assignments, which complain of the refusal of the trial court to admit this testimony, can not be sustained. We are also of the opinion that this testimony was properly refused because it was not authorized by the pleadings. The rule which relieves the defendant of the burden of pleading contributory negligence applies only

when the evidence adduced by the plaintiff in the development of his case raises the issue, and does not authorize the defendant to introduce proof of independent substantial facts tending to show contributory negligence on the part of the plaintiff without pleading such facts. If the appellant desired to introduce testimony to the effect that the manner in which appellee cut the wires from the poles was negligent, he ought by proper pleading to have notified the appellee that he intended to make such defense in order that the appellee might be prepared to meet such testimony. Appellees' evidence having failed to raise the issue of contributory negligence, appellant should not be permitted without proper pleading to supplement the evidence of appellee by proof of independent facts.

The evidence offered by appellant which the court refused to admit being, in our opinion, insufficient to raise the issue of contributory negligence on the part of the appellee, it follows that the court did not err, as complained of in the eleventh and twelfth assignments, in refusing to permit the appellant to withdraw his announcement of ready for trial on the ground of surprise at the ruling of the court in excluding said testimony because not authorized by the pleadings, and in refusing to allow the appellant to file a trial amendment charging appellee with contributory negligence in the manner in which he cut the wires from the pole. We think the judgment of the court below should be affirmed, and it is so ordered.

*Affirmed.*

Writ of error refused.