## W. S. Essex et al. v. James Murray.

### Decided May 10, 1902.

**1.—Building Contract—Alterations—Condition Precedent.**

Where by the terms of a building contract the order of the architect for an alteration in the original plans and a reference to arbitrators to fix the value of extra cost occasioned thereby was required only in the event of a failure of the contractor and architect to agree upon the value, an agreement as to the valuation of extras, or an arbitration as to their value, is not a condition precedent to a recovery where there is no controversy as to the reasonableness of such extra cost.

**2.—Same—Issue Raised by Evidence.**

Evidence that the architect was present when an alteration was made and said that stone would be better than iron for certain work, and told the contractor to put in stone and he would allow the extra cost, authorized the submission of the issue whether the architect, as authorized by the contract, ordered the change.

**3.—Same—Surety—Contract Abandoned.**

Where a contractor abandoned work on a building and it was completed by the owner at a cost which did not exceed the contract price, a surety on the contractor's bond was entitled to have returned to him collateral which he had deposited to secure whatever damage the owner might suffer by reason of default by the contractor.

**4.—Same—Waiver—Pleading.**

Waiver of a provision of the contract requiring a written order of the architect for alterations must be pleaded in order to be available in an action to recover the extra costs of such alterations.

**5.—Same—Architect's Estimates Conclusive.**

Where a building contract provided that payments should be made as the work progressed on certficates of the architect, not to exceed 90 per cent of the value at the time, the estimates of the architect were conclusive unless impeached for fraud.

**6.—Same—Claim for Extras—Evidence.**

While a failure of the contractor to make claim at the time for the extra cost of changes would be evidence that he made them of his own volition, and without intent to charge for them, it would not be conclusive against him.

Appeal from the County Court of Tarrant. Tried below before Hon. C. R. Bowlin, Special Judge.

*W. S. Essex* and *J. M. Mothershead,* for appellants.

*Jas. S. Davis,* for appellee.

CONNER, ASSOCIATE JUSTICE.—This suit was instituted in the County Court of Tarrant County by appellee to recover from appellants certain collateral securities or their value, consisting of a promissory note for $650 made by S. P. Gibson, and a certified check for $100. From the judgment in appellee's favor this appeal has been duly prosecuted.

The issues and facts necessary to an understanding of our conclusions may be thus briefly stated: On July 15, 1899, one Angus McLeod contracted with the Missouri Avenue M. E. Church South in the city of Fort Worth to erect, in accordance with certain plans and specifications, a church building for the contract price of $9179. One Howard Messer was employed as the architect under whose "directions" (acting as agent of said owner) and to whose "satisfaction" said building was to be completed. Among other things, the contract provided:

"Sec. 3. Should any alterations be required in the work shown or described by the drawing and specifications, a fair and reasonable valuation of the work added or omitted shall be made by the architect, and the sum herein agreed to be paid for the work according to the original specifications shall be increased or diminished as the case may be. In case such valuation is not agreed to, the contractor shall proceed with the alteration upon the written order of the architect, and the valuation of the work added or omitted shall be referred to three arbitrators (no one of whom shall have been personally connected with the work to

which these presents refer), to be appointed as follows: one by each of the parties to this contract, and the third by the two thus chosen; the decision of any two of whom shall be final and binding, and each of the parties hereto shall pay one-half of the expense of such reference.

"Sec. 9. The contractor shall make no claim for additional work unless the same shall be done in pursuance of an order from the architect, and notice of all claims shall be made to the architect in writing within ten days of the beginning of such work."

The contract also provided that at stated periods the architect should make estimates of the value of the work and material and pay to the contractor 90 per cent thereof, the balance, not to exceed the contract price, to be paid upon the completion and acceptance of the building; and it was further provided that should the contractor abandon the contract and building the church should have the right to complete the work, "at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing the work, such excess shall be paid by the owner to the contractor, but if such expense shall exceed such unpaid balance the contractor shall pay the difference to the owner."

To secure the contract so made McLeod gave bond with appellee as surety, the latter as further security also depositing with appellants, members of the church building committee, the collateral for the recovery of which this suit was instituted; it being stipulated by separate written contract then made by appellee, that in case of default on the part of McLeod the trustee therein designated should proceed to collect said collaterals and apply the proceeds "to the payment of whatever damages said church may suffer by reason of the failure of said McLeod to perform his covenants." McLeod in fact defaulted. For labor and material furnished by McLeod the church paid on certified estimates of the architect $8165, and in the further construction and completion of the building the further sum of $1711.70; thus paying in all $697.75 in excess of the contract price. Hence arises the contention of appellants, fully set out in their answer, that they have the right in behalf of said church to retain and apply, so far as necessary, the collaterals sued for in accordance with appellee's said contract.

In answer to this appellee asserts: (1) That the church from time to time paid McLeod more than 90 per cent of the value of the labor and material furnished by him, and that therefore appellee as surety for McLeod was discharged; and (2) that certain changes in the turrets from the original plans and specifications were made, and certain specified extra labor and material was furnished by McLeod in the erection thereof for which under his contract he was entitled to compensation, the aggregate value of such extras being alleged to be in a sum more than said amount overpaid by the church.

By demurrer to the petition, and by objection to charges given and refused, appellants first insist, in substance, that appellee failed to show right for an allowance of the value of the extras submitted in the charge

of the court because of a failure to allege and prove compliance with the terms of the contract relating thereto, in that it was not alleged or proven that notice to the church had been given of the change in turrets and of the increased cost of construction, and that it was not shown that the price for such extras had been agreed upon or submitted to arbitration.

Changes and extras other than said turrets were alleged and shown, but under the evidence it seems that the issues relating to the turrets alone were submitted to the jury, and we confine ourselves alone to such issues, and in our disposition have also confined ourselves to the second and third propositions under the assignments presenting this phase of the case, the first proposition being too general for consideration. Thus limited, we overrule the first, second, and fourth assignments of error. It will be apparent from a careful consideration of section 3 of the original contract that the written order of the architect for an alteration in the original plans and a reference to arbitrators to fix the value of extra cost thereby occasioned was required only in event of a failure of the contractor and architect to agree upon the value. In such event alone also does the contract provide (inferentially) for notice to the owner of the change or of extra cost. The contract constitutes the architect the agent of the owner. To him seems to be committed the discretion of determining when and what alterations shall be made, and if required by him, it is made the duty of the contractor to conform to the alteration; for which a "reasonable valuation of the work added or omitted shall be made by the architect," and the contract price "increased or diminished as the case may be." There was evidence to the effect that McLeod made the change in the turrets from galvanized iron to stone for his own benefit, and that he made no charge or claim for the extra value of the stone turrets. The architect also denied having ordered the change, but appellee testified: "Mr. Messer was there. He said that the stone would be better and he told us to put in the stone. That he did not remember whether there was any agreement as to price or not. That the architect said that he would allow them to make the extra cost." There is no controversy in the evidence as to the reasonableness or amount of the extra cost involved, and we think the evidence authorized the submission of the issues of whether the architect ordered the change, and if so whether the price or value of the extra labor involved was substantially agreed to.

A number of other contentions are made, as that by the terms of the depositing contract appellee could not recover until he furnished the certificate "showing a compliance with the contract on the part of McLeod." Also that the court erred in submitting the issue of waiver for want of support in the pleading. The provision made in the contract between appellants and appellee at the time of the deposit of the collaterals for the architect's certificate of completion is evidently inapplicable under the circumstances. To indulge this contention is to say that in no event could appellee recover the collaterals, it being

undisputed that McLeod did not and never can "comply" with his contract. Had he done so, then, on certificate of this fact, appellee was entitled to have the securities returned. He was also entitled to have them returned under other provisions of his contract if in the completion of the building the church was not required to pay in all more than the contract price. The waiver to be available should have been plead. This was not done. The case made by the evidence as to the turrets seemed to be one in which the architect ordered the change and perhaps substantially agreed on the extra cost. As to the item of turrets, therefore, a waiver on the part of the church of the written order of the architect to make the alteration and the reference of the question of value as arbitrators, and of notice to the owner of increased cost, was not necessary to entitle appellee to a recovery. To this extent, therefore, the charge was perhaps erroneous as submitting an immaterial issue not made by the pleadings, but the error seems to have been invited by appellants' requested special charge number 1 embodying the issue of waiver.

The sixth and thirteenth assignments of error complain of the action of the court in submitting the question of appellee's discharge because of payments to McLeod in excess of 90 per cent of the value of the work and material, and in refusing special charge number 10 to the effect that if the payments were made on certificates of the architect they were conclusive, even though the payments may have exceeded 90 per cent. Appellee's petition was also demurred to on the same ground. We think these assignments must be sustained.

The contract distinctly provided that the payments to McLeod should be made on the certificates of the architect and the jury were as distinctly instructed, as a separate ground of recovery, that if they should find that the payments made to McLeod were in excess of 90 per cent of the value of the work and material at the times of payment they should find in appellee's favor. Appellee testified on this point: "I never consented or ordered the committee or Mr. Essex to pay more than 90 per cent of the value of the work before the work was completed. * * * It is not a fact that I knew what money McLeod was getting. I never tried to get the estimates raised for McLeod. * * * I did not know how much McLeod was getting."

The architect testified: "I made the estimates in the usual way. I would go on the ground and make a careful inspection of the building and of what work had been done since the last estimate, and allow the contractor an estimate of the value of the work less 10 per cent to be held back until the completion of the building. * * * I gave them estimates in each case that I considered fair, and not more than 90 per cent of the value of the work done and material furnished."

Appellant Essex, the secretary and treasurer of the committee, testified: "Up to the time we took charge of the church I had estimates from the architect for every payment made." The certificates were in this connection offered in evidence, but no question being raised as to

their form they will not be set out. We deem it sufficient to only further state that no witness testified that the estimates were larger than those called for by the contract, and no witness testified to a payment made to McLeod other than one upon the certificate of the architect as provided in the contract.

We think it thus apparent that as to the payments made to McLeod up to the time of his abandonment of the contract the issue submitted was not raised in the evidence. In addition to which, in the case of Kilgore v. Educational Society, 35 Southwestern Reporter, 145, on certificate from this court, the Supreme Court distinctly holds that estimates of the architect given under circumstances similar to those involved in this case are conclusive unless impeached for fraud. It is true that after McLeod's abandonment of the building an additional estimate of $545.05 was made and paid without the architect's certificate for work and labor theretofore done by McLeod and not included in former estimates, but it is undisputed in the evidence that this last estimate was made upon the solicitation of appellee himself, and the jury were distinctly instructed to disregard it in determining this issue.

The evidence upon the other phase of appellee's right to recover was sharply conflicting, and we therefore conclude that the error here discussed will require the judgment to be reversed and the cause remanded, and it will be so ordered. In view of another trial, however, we add that the court properly refused to submit to the jury special charge number 7 requested by appellants to the effect that if they should find McLeod had failed to make claim for the value of the extra turrets they should find for appellants on that issue. McLeod's failure to make such claim would be evidence tending to support appellants' contention that the change was made of his own volition and without intent to charge therefor, but it can not be said to be conclusive against him.

Other assignments need not be noticed, and the judgment is reversed and the cause remanded.

*Reversed and remanded.*