CUDLIPP v. C. R. CUMMINGS EXPORT CO.†

(Court of Civil Appeals of Texas. Galveston. May 1, 1912. Rehearing Denied June 6, 1912. Motion to Correct Findings of Fact June 11, 1912.)

1. LOGS AND LOGGING (§ 10*)—SALE CONTRACT—SCALING AND CLASSIFYING.

Where logs were sold under an agreement that settlement should be made in accordance with a scale and classification to be made by the buyer, and it was understood that the logs, after delivery to the buyer and scaled and classified, would be sawed into lumber at once, after which it would be impossible to determine whether the scaling and classifying was correctly done, the agreement was binding upon the seller, in the absence of fraud or bad faith, though it did not state in express terms that such scaling and classifying should be final and conclusive.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 19–28; Dec. Dig. § 10.*]

2. SALES (§§ 71, 72*)—CONTRACT—CONSTRUCTION.

Where property is sold under an agreement that the quantity and quality shall be determined by the buyer, his estimates will not be conclusive unless expressly made so by the contract, or such intention is fairly inferable from its terms.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 189–196, 197–202; Dec. Dig. §§ 71, 72.*]

3. SALES (§ 48*) — CONTRACT — VALIDITY — PUBLIC POLICY.

Public policy will not interfere with the binding effect of a deliberate agreement between buyer and seller that the determination of the quantity and quality of the property sold shall be left to the buyer, if the determination is made honestly and in good faith.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 101–107; Dec. Dig. § 48.*]

4. SALES (§§ 71, 72*)—CONTRACT—CONSTRUCTION.

In determining whether the parties intend by a contract for the sale of property, providing that its quantity and quality shall be estimated by the buyer, that this estimate shall be final and conclusive, it is permissible to look to the subject-matter of the contract and the circumstances in so far as they explain the terms used.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 189–196, 197–202; Dec. Dig. §§ 71, 72.*]

5. EVIDENCE (§ 106*) — REPUTATION—ADMISSIBILITY OF EVIDENCE.

Where, in an action for the balance due on the purchase price of logs, the plaintiff pleaded that the persons who scaled and classified the logs for the buyer had practiced fraud, and charged them in his testimony with having stolen his logs, evidence was admissible to prove their general reputation for honesty.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 177–187; Dec. Dig. § 106.*]

Appeal from District Court, Liberty County; L. B. Hightower, Judge.

Action by George Cudlipp against the C. R. Cummings Export Company. From a judgment for defendant, plaintiff appeals. Affirmed.

Stevens & Pickett, of Liberty, for appellant. Hutcheson & Hutcheson, of Houston, for appellee.

REESE, J. George Cudlipp instituted this action against the C. R. Cummings Export Company to recover $1,396.38, alleged to be the balance due on certain ash and cottonwood logs delivered by plaintiff to defendant at its boom at Wallisville on the Trinity river, under a contract between them. The case was tried with a jury, the trial resulting in a verdict and judgment for defendants. His motion for a new trial having been overruled, plaintiff appeals.

It was alleged in the petition that appellant delivered to appellee on different dates certain ash and cottonwood logs, the number and value of which, according to the contract, are stated, the total value being $3,-171.71, and that appellee had paid him of that amount $2,183.32, leaving a balance due of $1,012.71. A further sum of $386.67 was alleged to be due under a former contract, making the aggregate indebtedness the amount sued for. The defense was that appellee had paid appellant for all logs delivered under the contract referred to, except the $387.67, which had been applied upon a former indebtedness due to appellee by appellant.

The evidence shows that appellee had settled for all of the logs delivered, according to the scaling and classification of the same made by the agents and employés of appellee at its mill, where the logs were delivered. Appellant denied the correctness of this scaling and classification, alleging that it had been fraudulently, unfairly, and negligently made, and introduced evidence tending to show that he had put in the river to be floated down to the mill a greater number of logs than were accounted for by appellee, and that some of these logs were of a better grade or classification than shown by appellee's scale, as shown by the scale of the same made by him on the river bank, making the difference sued for. The case as it is presented on this appeal turns upon the terms of the contract with regard to the scaling of the logs, and the legal effect thereof. The terms of the contract, which was verbal, are derived entirely from appellant's testimony. The logs were put in the river by appellant and left to float down to the boom at appellee's mill. On arrival there they were pulled out of the river onto the skidway at the mill, and scaled and classified to determine the quantity of feet in each log, and whether first class, second

class, or culls, which latter were not to be taken or paid for at all. When thus scaled, the logs went into the mill, were sawed up into lumber, and shipped out. The testimony of appellant as to the contract was, in substance, that the logs were to be scaled and classified by appellee's scalers at the mill on their arrival there, and that settlement was to be made according to the estimation and classification thus made. The scalers employed by appellee were competent and reliable men. It is not denied that settlements have been made for all logs according to the scale and classification thus made. The difference between the number of logs and grade thereof put into the river according to appellant's scaling, and those delivered at the mill according to appellee's scaling, is shown by the difference between the amount really due according to appellant's claim and the amount actually paid by appellee, as shown by the amount sued for. The evidence, however, showed that in floating logs the distance these logs were floated some would sink, some would go out in "run-outs" from the river, and be lost, and some would get caught on sand banks and lie there until there was a rise in the river, and from exposure to the sun would develop cracks and other defects, and this would affect the classification or grade of the logs. Appellant testified that appellee got all the logs he put in the river, but he could give no better reason for this statement than the fact that the logs were put in the river. Appellee rendered to appellant statements from time to time. After receiving the statements of May, June, July, and August, 1907, appellant on September 20, 1907, wrote to appellee, complaining of the scale and grading of the logs by appellee's scales. To this letter appellee replied on September 24th, suggesting that appellant arrange to spend two or three days at the mill where logs were delivered and measure the logs with appellee's men. After this appellee kept on sending statements, and appellant made no further protest or complaint, nor did he act upon appellee's suggestion that he come to the mill and overlook the scaling. He testified that he knew appellee was relying upon the contract, which provided that his men were to scale the timber and it was to settle on their scaling, that he knew that appellee was expecting to settle with him on the basis of these scales, and that, after the logs were sawed, there was no way to recheck any of them.

[1] After instructing the jury that, according to the undisputed evidence, the contract was that the logs were to be delivered in defendant's log boom at its mill, and were to be paid for as soon as they could be classified and scaled by defendant, according to such scale and classification, the court then charged the jury, in substance, that such scaling and classification by defendant would be binding on plaintiff, unless the jury found from a preponderance of the evidence that the difference between the quantity or classification of the logs that were in fact delivered by appellant and the quantity or classification thereof as shown by defendant's reports of such scaling and classification was so great as to raise in the mind of the jury the belief that there was bad faith, or a fraudulent purpose on the part of defendant in making said scale or classification. In short, the charge throughout embodied the principle of law that the scaling and classification made by appellee was binding on appellant, unless it was shown by appellant that there had been therein such gross mistake as to raise the belief that there was bad faith or fraudulent purpose on the part of appellee in making the scales or classification. By the charge this principle was applied, in separate paragraphs, both to the quantity and the classification as to quality of the logs. Appellant makes no objection to that part of the charge wherein the court states to the jury the terms of the contract, as shown by the undisputed evidence, but by his first and second assignments of error he assails that portion of the charge above referred to.

There was no evidence of actual fraud or bad faith further than such as might have been afforded by the great discrepancy between the quantity and grade of logs claimed by appellant to have been put in the river and that shown by the scaling and classification made and reported by appellee. Appellant's contention may be best shown by the following proposition from his brief: "In a contract for the sale and delivery of logs, if it is expressly agreed between the parties that the buyer shall scale and classify the logs, and that such scaling and classification shall be final and conclusive, still the seller is not bound thereby, if he can show fraud, gross mistake, or bad faith on the part of the buyer in making the measurements; but where the contract between the parties does not expressly provide that the scale and classification of the buyer shall be conclusive, but the parties simply agree that the logs shall be scaled and classed by the buyer when delivered to him, such scale is merely prima facie evidence of its correctness, and may be impeached for mistake, without proof of fraud or bad faith, and the true and accurate amount of timber delivered may be shown by the seller, regardless of whether there was fraud or bad faith on the part of the buyer in making his measurements and classification." The contract shown by the evidence, the terms of which are not disputed, was something more than an agreement that "the logs should be scaled and classed by the buyer when delivered to him," as stated in the proposition. There was the further important stipulation that settlements should be made according to such

scale and classification made by the buyer. There is the further fact, significant in determining the intention of the parties, that, when the logs were delivered at appellee's mill and measured and classified by its scalers, they were to go at once into the mill and be sawed up into lumber, after which it would be impossible to determine whether the scaling and classification had been correctly done.

[2] While there may be some conflict in the authorities in making application of the principle, there seems to be none as to the principle itself, which is that where one sells property to another, the quantity, grade, etc., to be determined by the act of either of the parties, or some third person agreed upon, the estimates of quantity and quality or grade of the thing sold shall not be conclusive, unless it is made so by the express provisions of the contract, or such intention is fairly inferable from its terms. Nelson v. Betcher Lumber Co., 88 Minn. 517, 93 N. W. 661; So. Lumber Co. v. Asher (Ky.) 64 S. W. 462.

It is appellant's contention that this case does not fall within the latter classification, in that there is neither an express stipulation that the scaling and classification done by appellee shall be conclusive, nor is such intention fairly inferable from the terms of the contract. The Betcher Case, supra, cited by appellant, and most strongly relied upon, arose upon a sale of logs. That part of the contract material to the question here presented was that the buyer agreed to pay $13 per 1,000 feet for the logs, the same to be scaled at the St. Paul boom by the Surveyor General or his deputy. It is fairly inferable from this statement of the contract by the court, though it is not so expressly stated, that payments were to be made according to the scale thus made. The significant part of the opinion is as follows: "There was no stipulation in the contract in the case at bar that the scale made by the Surveyor General should be final; nor was the agreement between them such as to warrant the inference that they intended to be conclusively bound thereby. That officer was not agreed upon as an arbitrator or umpire to determine a disputed question as to the quantity of logs, for there was no dispute between the parties upon that question, but was designated simply as the person to make proper measurement as the logs passed through and out of the St. Paul boom. We must assume, in the absence of some language indicating a contrary intention, that in agreeing upon him as the person to make the measurements the parties had in mind the duties of that officer and the effect given by the statutes of his performance thereof; and the court would not be warranted in giving greater effect to the scale or survey made by him than is given by the statutes defining such duties. Section 2397, Gen. St. 1894,

provides that the scale made by the Surveyor General, or his deputy, when made at the instance of the owner of any logs, is prima facie evidence of its correctness; and the same force and effect is given by section 2400 to such scale when made in the performance of the duties of the Surveyor General, whether made at the instance of the owner or not. If the parties intended to give greater effect to the scale made by this officer, it should have been expressly so stipulated in their contract, or the intention to do so should fairly appear from the terms of their agreement."

From this it is clearly apparent that the court felt the necessity of distinguishing the case from one like the present, where there was simply an agreement that a certain person should do the scaling and settlement should be made in accordance therewith. This seriously weakens, if it does not destroy, the effect of the opinion as an authority in the present case.

The case of So. Lumber Company v. Asher, supra, cited by appellant, also arose upon a contract for the sale of logs. The measurements were to be made in the booms of the buyer "upon which all settlements should be made between the parties, and same shall be taken as the final and conclusive measurements." The buyer presented measurements made by him alone and claimed for them the effect provided in the contract, as being binding and conclusive, but the court denied the contention on the ground that it was not provided in the contract that the measurements, which were to be final and conclusive, were to be made by the buyer alone, but that it was understood, as shown by the acts of both parties, that such measurements were to be participated in by both parties. So this case does not in the essential question decided support appellant's contention.

[3] We cannot agree to the doctrine intimated in the opinion that there is any public policy that would interfere with the binding effect of an agreement between buyer and seller, deliberately made, that the determination of the quantity or quality of the property sold should be left to either buyer or seller, if such estimate is made honestly and in good faith. Campbell Press Co. v. Thorp (C. C.) 36 Fed. 414, 1 L. R. A. 645. It may be an improvident contract for one to make, but that furnishes no reason why he should not stand to it. In the case of Sullivan v. Ross, 124 Mich. 287, 82 N. W. 1071, the parties had agreed upon certain parties to measure the logs, and the court held that their measurement was conclusive on the parties "unless there was fraud or mistake shown." In Ozan Lumber Company v. Haynes, 68 Ark. 185, 56 S. W. 1068, cited by appellant, we gather that the parties had agreed that the logs were to be scaled at the mill of the buyer, and payments to be made thereby. It does not appear that there was

any express agreement that such scaling was to be final. The effect of the holding is simply that in the case presented evidence could be introduced to show fraud, gross mistake, or bad faith. In the other cases cited by appellant the holding was that where by the terms of the contract the scaling was to be done by a third person, which was to be conclusive, his estimate could only be impeached for fraud, bad faith, or gross mistake. There is nothing in any of the authorities cited by appellant that conflicts with the construction given to the contract between appellant and appellee by the trial court; that is, that it was fairly inferable from its terms that it was the intention of the parties that they were to be bound by the scaling and classification of the logs made by appellee at the mill. The legal effect of such a contract was that it was conclusive upon the parties unless- impeached by evidence showing fraud, bad faith, or such gross mistake as to raise the belief of fraud or bad faith in the persons making the scale and classification. The parties agree as to the legal results of such a contract. The difference is that appellant insists that it is not fairly inferable from the undisputed terms of the contract that it was the intention of the parties that the scaling and classification of appellee was to be conclusive, and they were to be bound thereby, unless it was impeached either for fraud or such gross mistake as to raise a belief of bad faith or fraud.

[4] To determine what was the intention of the parties by the terms of the contract that the logs were to be scaled by appellee at the mill and settlements made according to such scaling, it is permissible to look to the subject-matter of the contract and the attendant circumstances in so far as they explain the terms used. There is no dispute between the parties as to these. The logs were to be delivered at the mill of appellee, and were, when scaled, to be sawed into lumber, after which there was no way to determine whether appellee's scaling and classification were correct or not. It is not reasonable to suppose that appellee would have consented that the number, size, and grade of the logs should be determined by a scale and grading made by appellant when the logs lay upon the bank of the river and before they were put in the water, taking the chances of the current to carry them to the mill or to turn them into run-outs or strand them on sand banks, there to await the chances of a rise to carry them on. Appellant did not care to go to the mill and assist in the scaling, or to have a man of his own employment to do so. It is entirely clear that in the light of these circumstances appellant agreed to accept appellee's scaling and classification, and to settle by it, and it would have added nothing to the legal force and effect of this agreement if it had been further provided in express terms that

appellee's scaling should be "final and conclusive." The agreement and the circumstances necessarily made it final and conclusive, with all the legal effects attaching to such stipulation. Appellant's own testimony showed that he expected and intended the scaling by appellee to be binding and conclusive upon him, if it was honestly done, but his claim is that it was not honestly done, that it was fraudulently done, and that in fact appellee's employés stole his logs. We think the charge of the court was a correct statement of the law as applicable to the facts of the case.

It seems to be the settled rule in Texas, with reference to building contracts, as stated in Kilgore v. Baptist Soc., 89 Tex. 465, 35 S. W. 145, that where the parties have agreed that architects' estimates made as the work progressed should determine extent of performance, and amount of installments, such estimates are conclusive unless impeached for fraud. Boettler v. Tendick, 73 Tex. 491, 11 S. W. 497, 5 L. R. A. 270; Loan Ass'n v. Thomas, 36 Tex. Civ. App. 268, 81 S. W. 1044; Essex v. Murray, 29 Tex. Civ. App. 368, 68 S. W. 739; Jones v. Gilchrist, 88 Tex. 88, 30 S. W. 442. We see no reason why the same rule should not apply to the present case, unless it be that in this case the buyer himself, and not a third person, was to do the scaling. As we have stated, we do not think this requires the application of a different rule. Appellant chose, for reasons satisfactory to himself, to appoint appellee to do the scaling, and cannot now urge that such scaling is not as effectual against him and attended by the same legal results as though done by a third person agreed upon for that purpose. As bearing upon the general principle stated the following authorities are cited: Kilberg v. U. S., 97 U. S. 398, 24 L. Ed. 1106; Sweeney v. U. S., 109 U. S. 618, 3 Sup. Ct. 34, 27 L. Ed. 1053; Wiburg & Hannah Co. v. Walling, 113 S. W. 832. There was no dispute as to the terms of the contract, and the court did not err in declaring the legal result as set forth in the charge.

We think the third assignment is without merit. The proposition that the scaling and classification made by appellee was binding unless such gross mistake is shown as to evidence bad faith or fraud is necessarily repeated in the charge, such repetition being called for in presenting the different phases of the evidence, but we do not find it stated oftener than is necessary, and certainly not in such way as to operate to the prejudice of appellant, or give undue emphasis to the rule stated.

By the fourth assignment appellant assails the charge in its entirety as "vague, ambiguous, indefinite, confusing, contradictory, unintelligible, and misleading, and gives the jury no guide by which it should arrive at a verdict." A rather formidable indictment, but we think the charge is not proven as to

any of the specifications set out. There is room for argument that the general statement of the rule of law applicable to the facts as discussed in this opinion is erroneous, but the charge states the rule clearly and positively. The assignment cannot be sustained.

The fifth and sixth assignments are too general to require consideration.

The seventh assignment of error presents the same question as was presented in the first and second assignments, and for the reasons given in disposing of those assignments is overruled.

The eighth assignment presents no error. The court did not err in sustaining objection to the admission in evidence of the cypress stump.

[5] Appellee offered evidence to prove the general reputation for honesty of the persons who did the scaling and classification of the logs for appellee at the mill, to which appellant objected on the ground that their credibility had not been attacked. The objection was overruled and he excepted. Appellant's case, as stated in his petition, is grounded upon allegations of fraud practiced by these persons in scaling and classifying the logs, and in his testimony appellant did not hesitate to charge them with having stolen his logs. Their honesty was directly attacked, and we think the case falls fairly within the rule announced by this court in Houston Electric Co. v. Faroux, 125 S. W. 923, and Word v. Houston Oil Co., 144 S. W. 334, holding such evidence admissible, in the circumstances presented.

We find it unnecessary to pass upon the cross-assignments of error.

We find no error requiring a reversal of the judgment, and it is therefore affirmed.

Affirmed.

### Motion to Correct Findings of Fact.

In this motion appellant has pointed out certain inaccuracies in our conclusions of fact which we desire to correct. In our opinion it is stated that "the logs were put in the river by appellant and left to float down to the boom at appellee's mill." This is not correct. Appellant's testimony on this point was not contradicted, and from it we conclude that the larger portion of the logs were rafted together, and taken down the river by appellant and put in the boom. A lot of cottonwood logs were put in the river, and appellant started down with them. The river fell, and the water became too low to float them, and they stranded on a sand bar. About two weeks afterwards appellant went down the river to see about them, and found them gone. This was in July. Appellant testified: "I followed these logs to Cummings' mill in October. I found some of the logs along the bed of the river at that time. I did not find all of them. A majority of them went into the boom." The greater part of the ash logs, appellant testified, he put in the boom.

Appellant also objects to the statement in the opinion that "it is not denied that settlements have been made for all logs according to the scale and classification made." What is meant is that it is not denied that appellee has paid for all logs shown by its scale and classification. That we think is true, except that appellant denied the correctness of the old account of $319.79. This payment was not accepted by appellant as a settlement. He always claimed that he was entitled to more than was shown by such scale and classification. He also denied owing the old account of $319.79. These were all questions for the jury, and they were determined against appellant's contention. The assignments of error, in fact, present only the question as to the correctness of the charge, and upon this question the findings referred to are immaterial. However, we make such corrections as to the facts as we think are required by the evidence.