### HOUSTON ELECTRIC COMPANY v. CHARLES FAROUX.

Decided February 11, 1910.

**1.—Juries—Selection—Jury Wheel Law, Constitutional.**

The Act of the Thirtieth Legislature (Gen. Laws, 1907, p. 269) known as the "Jury wheel law" prescribing a method for the selection of jurors in counties which have a city or cities therein with a population of 20,000 or more according to the United States census of 1900, is not in violation of article III, sec. 56, of the Constitution, which provides that the Legislature shall not, except as otherwise provided in the Constitution, pass any local or special law authorizing the summoning or empaneling of grand or petit juries.

**2.—Personal Injury—Issue of Fact—Province of Jury.**

It is peculiarly the province of the jury to determine issues of fact when the evidence is conflicting. Evidence reviewed in a damage suit for personal injuries caused by the derailment of a street car, and held sufficient to support the verdict for the plaintiff although diametrically opposed to the evidence introduced by the defendant.

**3.—Same—Imputation of Fraud—General Reputation.**

The issue being whether plaintiff had been ruptured and injured by the derailment of a street car on which he was a passenger, or whether such injuries existed prior to the derailment and arose from other causes than the derailment, as alleged by defendant, the court properly permitted the plaintiff to introduce evidence of his general reputation for truth and veracity, honesty and fair dealing.

**4.—Practice on Appeal—Objection to Evidence.**

An objection to the admission of evidence not made in the trial court will not be considered on appeal.

**5.—Expert Testimony—Exclusion—Harmless Error.**

The issue being whether the rupture from which plaintiff suffered was caused by the derailment of a street car on which he was a passenger or had existed before that time, and a doctor having testified for defendant that plaintiff manipulated and reduced the rupture in the doctor's presence on the day following the accident; that such manipulation required skill and practice,

it was not reversible error to refuse to permit the doctor to testify further that plaintiff reduced the rupture as one familiar with such an operation.

Appeal from the District Court of Harris County. Tried below before Hon. Norman G. Kittrell.

*Baker, Botts, Parker & Garwood,* for appellant.—The jury-wheel law is unconstitutional and void. Article III, sec. 56 of the Constitution; Chap. 139, p. 269, Acts 1907; Binney's "Restrictions upon Local and Special Legislation in State Constitutions," pp. 54, 59, 78-80; Lewis' Sutherland on Statutory Construction, secs. 125, 127, 200; State v. Scott, 100 N. W., 812; City of Topeka v. Gillett, 4 Pac., 800-2; State v. City of Des Moines, 65 N. W., 818; Eckerson v. City of Des Moines, 115 N. W., 117; Campbell v. City of Indianapolis, 57 N. E., 920; Mitchell v. McCorkle, Sheriff, 69 Ind., 184; Town of Longview v. City of Crawfordsville, 73 N. E., 78; Board of Commissioners v. Spangler, 65 N. E., 743; Kraus v. Lehman, 83 N. E., 714; Edmunds v. Herbandson, 14 L. R. A., 725-7; Plummer v. Borsheim, 80 N. W., 690; Vermont Loan & Trust Co. v. Whithed, 49 N. W., 318-20; State v. Schwab, 34 N. E., 736; State v. Mitchell, 31 Ohio St., 592; State v. Pugh, 1 N. E., 439; State ex rel. Bennett v. Common Council of Trenton, 25 Atl., 114; Perrine v. Jersey Central Traction Co., 56 Atl., 374; State v. City of Elizabeth, 28 Atl., 51; State v. City of Passaic, 45 Atl., 817; Dickinson v. Board of Chosen Freeholders of Hudson County, 60 Atl., 220; State ex rel. Patterson v. Donovan, 20 Nev., 75; Woodard v. Brien, 14 Lea, 520; Sutton v. State, 33 L. R. A., 589; Peterson v. State, 56 S. W., 834; Nichols v. Walter, 33 N. W., 800-2; State v. Rogers, 106 N. W., 345; Devine v. Board of Commissioners of Cook County, 84 Ill., 590; Pettybone v. West Chicago Park Commissioners, 74 N. E., 398-9; Bingham v. Board of Supervisors, Milwaukee County, 106 N. W., 1071; Burnham v. City of Milwaukee, 73 N. W., 1018; Village of Bloomer v. Town of Bloomer, 107 N. W., 974; Groves v. County Court, 26 S. E., 460-3; Dunne v. Kansas City Ry. Co., 32 S. W., 642; State v. Herrmann, 75 Mo., 340; State v. Justices of County Court, 1 S. W., 307; State ex rel. Kehr v. Turner, 107 S. W., 1064; In re Henneberger, 50 N. E., 61; St. John v. Andrews Institute for Girls, 83 N. E., 981; Ladd v. Holmes, 66 Pac., 714; Ellis v. Frazier, 63 Pac., 642; Codlin v. Kohlhousen, 58 Pac., 499; Guthrie Daily Leader v. Cameron, 41 Pac., 639; Miller v. City of Louisville, 99 S. W., 284; Blackenburg v. Black, 50 Atl., 198; Lougher v. Soto, 62 Pac., 184; State v. Berkeley; 41 S. E., 961; McInerney v. City of Denver, 29 Pac. 516; Central Trust Co. v. Citizens' Street Railway Co., 80 Fed., 218-222.

In an action for damages for alleged personal injuries, general evidence of good character or reputation of plaintiff is immaterial and irrelevant, unless his reputation has first been attacked by defendant by general evidence of bad character. In this case defendant offered no evidence on the question of plaintiff's character or reputation, the issue being whether or not plaintiff had sustained the injury claimed at the time and in the manner alleged. The court therefore erred in admitting the evidence above referred to, and in permitting plaintiff

to bolster up his case with evidence of previous good character, to the prejudice of defendant's rights. Texas & P. Ry. Co. v. Raney, 86 Texas, 367; Gulf, C. & S. F. Ry. Co. v. Younger, 40 S. W., 423; Timmony v. Burns, 42 S. W., 133-4; McCowan v. Gulf, C. & S. F. Ry. Co., 73 S. W., 47; White v. Epperson, 32 Texas Civ. App., 162.

That the testimony of Dr. Scott was admissible: Seliger v. Bastian, 66 Wis., 521-2; Rogers on Expert Testimony, p. 19, sec. 6, p. 148, sec. 64.

The court erred in permitting counsel for the plaintiff to ask witness Doctor Slataper the following questions: "Isn't it a fact that, when railroad patients come into that infirmary, you have a regular printed form of questions and answers whereby you take their statements and find out how the accident occurred, and that it is the duty of the physician to take, for the benefit of the railroad company, a statement of the injured party."

Defendant objected to this question, because it had not been shown that the street railway company had any connection with the physicians or hospital in question, and because it had been shown that the defendant company had no connection with the hospital, and that the physicians were not physicians for the street railway company, it also having appeared in the evidence that the plaintiff voluntarily went to the hospital and called in these doctors to see him, and they were not called or selected by the street railway company. In response to the objection to the above question counsel for plaintiff stated:

"I wanted to show that this witness habitually did not disclose any such delicacy with reference to other patients, and I propose to show that these doctors have testified time and again to every term of the court for years and years here."

Defendant there and then objected to counsel's remarks, but the court permitted the question to be asked and the remark to go unchallenged. Thereupon, over the objection of the defendant, the following questions were asked and answers elicited:

Q. "You didn't get this notion of yours that it wasn't fair to a patient to disclose what he said in his pain and anguish, and the confidential relation to his physician—you didn't get that notion from Dr. Stuart and Dr. Red?"

A. "No, sir."

Q. "You got that somewhere else? Isn't it a fact that Dr. Stuart and Dr. Knox are called—say Dr. Stuart and Dr. Red—that they are called time and time again every year as witnesses for the railroad company against patients, without reference to the railroad company or not—called as witnesses against patients in their infirmary, not for the patients, but against them?"

A. "They have been called both ways."

Q. "What portion of the time both ways—what is the majority of cases?"

A. "With reference to strictly railroad work or private patients?"

Q. "I am talking about patients that are sent there under the circumstances mentioned awhile ago, when you take their written statements on a printed form."

A. "Where the cases that I take the statement on a written form, those are cases for which I am division surgeon for the railroad."

Q. "And you turn in that information to the railroad company?"

A. "I do on the road that I am division surgeon on; there is a lot of roads over there that I don't have anything to do with."

Q. "They are taken not for the benefit of the patient, then; that's true?"

A.. "They are taken because we are asked to take those statements."

Q. "Who asks you to take them—who requests you to take them?"

A. "The chief surgeon of the railroad."

Q. "Who is the chief surgeon of the railroad?"

A. "Red and Stuart."

*Hogg, Gill & Jones,* for appellee.

McMEANS, ASSOCIATE JUSTICE.—Charles Faroux sued the Houston Electric Company for damages for personal injuries sustained by him by derailment of a street car of the defendant upon which he was a passenger. He alleged that when the car left the track he was violently thrown against the seats of the car and permanently and seriously injured and ruptured.

Defendant answered by general denial, and specially pleaded that, if the plaintiff is suffering from any or all of the injuries alleged by him, that he did not receive such injuries at the time and in consequence of the derailment of the car, but that the same existed anterior to the time of the accident, and arose from causes and conditions other than the derailment.

The case was tried before a jury, and resulted in a verdict and judgment for plaintiff. Defendant appeals.

Appellant's first assignment of error is as follows: "The court erred in overruling the defendant's motion to quash the panel of jurors selected for the week in which this case was tried, and from which panel the defendant herein was required to select the jury to try this case, because, as is averred in said motion, the jury was not selected by jury commissioners as provided by the Revised Statutes, but under what is known as the jury-wheel law enacted by the Thirtieth Legislature of the State of Texas, which enactment is unconstitutional and invalid."

Appellant contends that chapter 139 of the Acts of the Thirtieth Legislature, known as the "Jury-Wheel Law," is a special law, because it applies only to counties which, according to the United States census of 1900, had a city or cities therein with a population of twenty thousand or more, and which will still apply to such counties though, by a subsequent census, their cities fell short of the designated population, and does not apply to other counties thereafter having a city or cities therein with such population; and that the Act is therefore in conflict with article III, section 56 of the Constitution of Texas, which provides that: "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing . . . summoning or empaneling grand or petit juries."

In support of its contention appellant has cited many decisions of the courts of other States in which similar constitutional provisions have received the construction here contended for; and if the question was one of first impression in this State, we confess it would be one presenting much difficulty of solution. But whatever may be the construction elsewhere applied, the exact question seems to have been settled in this State adversely to appellant's contention by the following cases: North Texas Traction Co. v. Danforth, 58 Texas Civ. App., 419 (116 S. W., 147), writ of error denied by the Supreme Court; Brown v. State, 54 Texas Crim. Rep., 133; Lee v. State, 54 Texas Crim. Rep., 382; Smith v. State, 54 Texas Crim. Rep., 298. The assignment is overruled.

By its second assignment appellant complains that "The verdict of the jury is against the great weight and preponderance of the evidence, and is without evidence to sustain same, and is so palpably against the weight of the evidence and wanting in evidence to sustain same that it leads to the unmistakable inference that the jury, in rendering a verdict for plaintiff, was actuated by passion, prejudice, malice, or by some other improper motive."

Plaintiff contended that the rupture from which he was suffering was the direct result of the injury received by him by the derailment of the car. Defendant denied this, and attempted to show that plaintiff had been ruptured long before the date of the derailment. Upon this issue many witnesses were introduced upon each side. For the defendant, a physician, who lived at El Campo, testified that, before the date of the accident, and while the plaintiff lived there, plaintiff consulted him about the rupture and about the character of a truss to wear. Other witnesses testified that plaintiff, while at El Campo, told them he was ruptured, and two of these swore that they had seen him wearing a truss. The physician who was first called to see plaintiff after the derailment testified that plaintiff told him the rupture was old, and that he exhibited to him an old rupture truss in order that the witness might order a new one for him; four physicians who, a year after the accident, operated upon plaintiff, testified that the rupture had the appearance of long standing, and three of these testified that plaintiff admitted he was ruptured before the date of the accident, and one of them swore that he admitted he was ruptured before coming from France, many years ago. Other testimony upon the same point was introduced by defendant. This evidence, standing alone, would have compelled a finding in defendant's favor on this issue. But plaintiff and his wife stoutly denied that plaintiff was ruptured, or that he ever wore a truss prior to the date of the accident, and he denied that he had ever told the defendant's witnesses or any one else that he was ruptured prior to the derailment, or that he ever exhibited a truss to any of them. In addition to this, plaintiff introduced in evidence a mass of circumstances tending to support the testimony of himself and wife, all of which, standing alone, would have compelled a finding in his favor upon the issue. This being true, the question was peculiarly one for the determination of the jury, and the jury having resolved the issue in plaintiff's favor, their finding is conclusive upon us, and should not be disturbed. The as-

signment is overruled, as well as is also the third assignment, which raises substantially the same question.

By its fourth assignment appellant complains of the action of the court in admitting in evidence the testimony of several witnesses as to the reputation of plaintiff for truth and veracity, honesty and fair dealing while he lived in Louisiana, El Campo and the city of Houston. Appellant objected to this character of evidence upon the grounds that "it was immaterial, and did not tend to prove any issue involved, and that it was incompetent in a case of this character to introduce testimony as to reputation of plaintiff for truth and veracity or for honesty and fair dealing in the community in which he lived at the time of .the accident or in other communities in which he had theretofore lived."

Plaintiff pleaded and testified that the rupture was caused by the derailment. Defendant pleaded that plaintiff did not receive any injuries in consequence of the derailment, but that such injuries existed anterior to the time of the accident and arose from causes other than the derailment. This allegation was followed up by defendant by offering the testimony of several witnesses to show that plaintiff had made statements contradictory of those made by him upon the witness stand. This was tantamount to charging, both by pleading and proof, that the plaintiff was attempting to recover for injuries which he knew were not the result of the derailment and for which he knew the defendant was not liable, and was, in effect, a charge that plaintiff was fraudulently attempting to mulct the defendant in damages which it should not pay. This was, in effect, an attack upon his credibility as a witness and an impeachment of his character for truth, and he had the right to strengthen his testimony to the effect that he was injured in the derailment, as he claimed to be, by proof of his general reputation for truth and veracity. Texas & P. Ry. v. Raney, 86 Texas, 363; Texas, C. & N. W. Ry. v. Weideman, 62 S. W., 810; Loomis v. Stuart, 24 S. W., 1078; Phillips v. State, 19 Texas Crim. App., 164; Fire Ass'n v. Jones, 40 S. W., 44; Fox v. Robbins, 70 S. W., 597; Shepard v. Love, 71 S. W., 68; Contreras v. San Antonio Traction Co., 83 S. W., 870; Missouri, K. & T. Ry. v. Dumas, 93 S. W., 493; Missouri, K. & T. Ry. v. Adams, 42 Texas Civ. App., 274 (114 S. W., 453); 1 Greenl., sec. 469.

Appellant further contends that if proof of plaintiff's good character was admissible in the circumstances, the proof should have been confined to his reputation in Houston, where he resided at the time of the accident, and not in Louisiana, where he had not lived for many years. This objection was not made in the court below, and could not have been in the mind of the court when passing upon the objection that was made, and fairness to the trial judge and to opposing counsel forbid that it be considered now when raised for the first time in this court. The fourth assignment is overruled.

By the fifth assignment appellant complains of the refusal of the court to permit it to prove by its witness Doctor Scott that, when he first called to see the plaintiff, which was the day after the accident, plaintiff was able to manipulate or reduce his rupture as one familiar with manipulating it. This witness had testified fully to the point

which defendant desired to bring out, namely, that "plaintiff manipulated and reduced the rupture in the doctor's presence on the day following the accident; that such manipulation required skill, and was not a simple matter; that a person who did not know how to reduce a rupture could not do it," and that "the probabilities are, a man would fail to reduce rupture who had never tried it before. It requires some little experience." The limit of expert privilege was reached, we think, when the witness was permitted to say that only skilled persons could reduce it, and that plaintiff reduced it; and it was not error—certainly not reversible error—to refuse to permit the witness to further testify that plaintiff reduced it as one familiar with such an operation. The assignment is overruled.

Nor was there error in permitting the plaintiff, on cross-examination of defendant's witness Doctor Slataper, to ask the questions and elicit the answers set out in the sixth assignment of error. This witness had given testimony of a most damaging character against the plaintiff, and the questions asked were well within the range of legitimate cross-examination in testing the witness.

We think the record discloses no reversible error, and that the judgment of the court below should be affirmed, and it has been so ordered.

*Affirmed.*

Writ of error refused.