## WELLS v. LEWIS et al.

### No. 5136.

Court of Civil Appeals of Texas. Texarkana.

June 30, 1937.

Rehearing Denied July 22, 1937.

Edwin M. Fulton, of Texarkana, and W. B. Chauncey, of Jefferson, for appellant.

Florence & Florence, of Gilmer, for appellees.

WILLIAMS, Justice.

Appellant, Thomas Wells, plaintiff below, instituted this suit against H. G. Lewis, Jr., Geo. W. Gipson, M. C. Wells, and L & G Oil Company. alleging the L & G Oil Company to be a copartnership composed of H. G. Lewis, Jr., and Geo. W. Gipson. Appellant sought to cancel a purchase letter in the original sum of $3,500 and two promissory notes of $500 each, executed by him and payable to L & G Oil Company.

In a written agreement dated October 20, 1934, H. G. Lewis, Jr., acting for himself and for the partnership firm of L & G Oil Company, contracted with M. C. Wells to drill a well to 4,000 feet, unless commercial production of oil and gas should be found at a lesser depth; to drill carefully and core any sand encountered between the depths of 3,300 and 3,500 feet; and to permit M. C. Wells to have access to the cores and cuttings for laboratory examinations. And in this agreement M. C. Wells became obligated to sell leases in the block of 6,000 acres to the amount of $5,000; these sales to be evidenced by purchase letters payable and acceptable to the partnership.

M. C. Wells sold to his father, appellant herein, $3,500 of leases and secured the purchase letter involved in this suit. The two notes later secured were credited on the original $3,500 item, and were executed to provide L & G Oil Company with some ready credit to complete the will.

The first paragraph of the purchase letter executed by appellant, dated November 15, 1934, and addressed to L & G Oil Company, Gladewater, Tex., reads: "I hereby agree to pay to you the sum of Thirty Five Hundred ($3500) Dollars, when the well which you have contracted to drill for M. C. Wells and C. E. Gordon has been drilled to a depth of 4,000 feet or to commercial production. * * * The measurement of the hole or the terms of a commercial producer of the

well shall be final as to this completion upon an affidavit executed before a notary public by M. C. Wells, who is hereby authorized agent or representative."

Appellant alleged as grounds for cancellation of these instruments that the L & G Oil Company did not drill the well to 4,000 feet; that it did not drill said well in an exceptionally careful manner, and refused to permit M. C. Wells to have access to the cores and cuttings for laboratory examination. Appellees denied these allegations, and by cross-action sought recovery. The jury findings were in favor of appellees, and judgment was rendered against appellant in favor of H. G. Lewis, Jr., and Geo. W. Gipson and the L & G Oil Company, a partnership composed of H. G. Lewis, Jr., and Geo. W. Gipson, on the three instruments. No judgment against M. C. Wells was sought. There is no attack made upon any jury finding.

Appellees introduced witnesses Hoosier, Steen, and Pewitt, and each was permitted to testify on direct examination over objections of appellant that the general reputation of H. G. Lewis, Sr., as a drilling contractor was good; that the general reputation of H. G. Lewis, Sr., for fair dealings was good; that the general reputation of H. G. Lewis, Sr., for drilling wells was good; and the witness Pewitt further testified that the general reputation of the L & G Oil Company for the faithful performance of its contracts was good.

■ Various assignments and propositions presented in this appeal involve the admissibility of this supporting evidence of good character. The admissibility of supporting evidence of good character in civil cases is controlled by the rule announced by Justice Leddy of the Commission of Appeals in Grant v. Pendley, 39 S.W.(2d) 596, 599, 78 A.L.R. 638, to wit: "We therefore announce the rule to be that supporting evidence of good character, either for truth and veracity or honesty and fair dwelling, should only be admitted in those cases [a] where the nature of the action directly involves the character of a party, [b] where a witness has been impeached, or [c] where a party by his pleading or evidence charges his adversary with the commission of a crime involving moral turpitude." (The letters [a], [b], and [c] are ours.)

If this testimony was admissible, it will come under section marked [c] of the foregoing rule, to wit: "where a party by his pleading or evidence charges his adversary with the commission of a crime," and would become admissible by reason of the allegations of appellant under paragraph 7 of his first amended original petition, reading:

"Plaintiff further alleges that in the purchase letter above mentioned it is provided as follows:

" 'The measurement of the hole or the terms of commercial producer of a well shall be final as to this completion upon an affidavit executed before a Notary Public by M. C. Wells, who is hereby authorized agent or representative'; and in this connection, plaintiff alleges that the defendant, M. C. Wells, and the defendant H. G. Lewis, Jr., and/or H. G. Lewis, Sr., who was then and there acting as the duly authorized agent for and on behalf of the defendants, other than the defendant, M. C. Wells, whereby M. C. Wells was to make a false affidavit relative to the completion of said well and relative to the depth thereof, and that under said collusive agreement, the defendant, M. C. Wells, should make an affidavit that said well had been drilled to a depth of 4,000 feet, or more, and that in pursuance of said collusive agreement, the said defendant, M. C. Wells, did make an affidavit before a Notary Public to the effect that said well had been drilled to a total depth of more than 4,000 feet; that said affidavit was false and untrue and known to be false and untrue by the defendants, their agents, servants, and employees, and was made for the purpose of cheating and defrauding this plaintiff out of said sum of $3,500.00, and in order to bind this plaintiff on said purchase letter."

M. C. Wells, a witness for appellant, on direct examination denied any collusion or agreement with any of the appellees or H. G. Lewis, Sr., but testified that he made an affidavit that the well had been drilled to 4,007 feet upon the representations made to him by H. G. Lewis, Sr. But the testimony discloses that H. G. Lewis, Sr., secured a representative of Halliburton Oil Company to measure the depth of the well with a steel tape; that Lewis invited M. C. Wells to be present and that M. C. Wells, a brother, and others were present on the derrick floor or nearby when the measurement was made; and that M. C. Wells and H. G. Lewis, Sr., made calculations as to the measurements, and next day M. C. Wells made the affidavit in question.

It will be noted that H. G. Lewis, Sr., was not a party to the suit. But in this case the whole fight was built upon and around H. G. Lewis, Sr. Appellant sought to prove by witnesses who testified in behalf of appellees that there were several judgments against H. G. Lewis, Sr., and that H. G. Lewis, Sr., was operating in the name of L & G Oil Company. It was alleged throughout appellant's petition that H. G. Lewis, Sr., was the agent of L & G Oil Company and the jury so found him to be. H. G. Lewis, Sr., aided and assisted in making the contract with M. C. Wells and he supervised and managed most of the drilling operations. He testified in the trial of the case.

■ The evidence introduced in the trial in no wise charged the adversary with a crime involving moral turpitude. But paragraph 7 of the pleadings charged M. C. Wells with committing a felony, to wit, false swearing, and charged both H. G. Lewis, Jr., and his father, H. G. Lewis, Sr., with the commission of another felony, to wit, subornation of false swearing, both being crimes involving moral turpitude. Articles 310, 315, and 316, Penal Code of Texas. And by reason of these charges in the pleadings, evidence of good character, either for truth and veracity, or honesty and fair dealings, became admissible. Grant v. Pendley, supra; Waggoman v. Ft. Worth Well Machinery Co., 124 Tex. 325, 76 S.W.(2d) 1005; St. Louis, S. F. & T. Ry. Co. v. Barr (Tex.Civ.App.) 67 S.W.(2d) 1063. And this rule will apply where the adversary charges the agent of the other party especially under the particular facts of this case as herein detailed. Cudlipp v. Cummings Export Co. (Tex.Civ.App.) 149 S. W. 444.

The Texas courts with but few exceptions have stated the rule to be that evidence of the good reputation of a party for honesty and fair dealings is admissible in a civil action when the party is charged by the pleadings or the proof with fraud or crime involving moral turpitude. Houston Elec. Co. v. Faroux, 59 Tex.Civ.App. 232, 125 S. W. 922; Cudlipp v. Export Co., supra; Word v. Houston Oil Co. (Tex.Civ.App.) 144 S.W. 334; Texas & P. Ry. Co. v. Raney, 86 Tex. 363, 25 S.W. 11. But beginning with Luckenbach v. Thomas (Tex.Civ. App.) 166 S.W. 99, cited with approval in Grant v. Pendley, the rule in reference to fraud has been modified. The rule now as announced in Grant v. Pendley, supra, Waggoman v. Ft. Worth Well Machinery Co., supra, appears to mean that, when the fraud charged involved the commission of a crime involving moral turpitude, character evidence is admissible.

In restricting the rule as to admissibility of this type of evidence, Justice Leddy advanced very convincing reasoning in these words, "with both sides using character witnesses, often the real merits of the controversy would be obscured or entirely lost sight of, and he who could best develop this phase of his testimony would stand the better chance to obtain a verdict. As has often been declared, it is a far safer rule that controversies between citizens should be decided upon facts having a direct bearing upon the issues between them rather than upon mere opinions of partisan friends as to the relative standing of the parties to the litigation." We feel that the rule as announced in Grant v. Pendley should be strictly construed, and that justice would be better served if under division [c] of the rule the conjunction "and" had been used so as to require not only the pleadings but also the evidence as well to charge the adversary with a crime involving moral turpitude. But it is our duty to follow these provisions as announced by the Commission of Appeals, approved by the Supreme Court.

■ It is not contended that the testimony complained of was admissible under division [b] of the rule. This testimony was not admissible under division [a] of the rule, because the nature of this action did not directly involve the character of a party to the suit. The question was, if appellees drilled the well to 4,000 feet, and if they drilled it in a good workmanlike manner. This question of a false affidavit was merely incidental to the issues in the suit. In fact, the affidavit made by M. C. Wells was never introduced in the record. The evidence as to the depth of the well and the manner of its drilling was developed by a large number of witnesses and documentary evidence.

The assignment relating to the admissibility of certain testimony given by H. G. Lewis, Jr., is without merit.

The judgment is affirmed.