## W. M. STEED v. B. M. PETTY ET AL.

(Case No. 2076)

1. ESTOPPEL IN PAIS—WHAT NECESSARY TO CONSTITUTE—Amongst other requisites two must concur, to constitute an estoppel: First, there must have been a false representation or a concealment of material facts; second, the party to whom the representation was made or from whom the material facts were concealed, must have been ignorant of the existence of the facts concealed or of the falsity of the representation. (Citing Bigelow on Estop., 484; 2 Pomeroy Eq. Jur.)

2. SAME—MARRIED WOMEN—INFANTS—Neither married women nor infants are estopped *in pais* unless their conduct has been intentional and fraudulent. (Citing Bigelow on Estop., 510; Crayton v. Munger, 9 Tex. 285; Fitzgerald v. Turner, 43 Tex. 79.)

3. TRESPASS TO TRY TITLE—LAW PRIOR TO REVISED STATUTES, WHEN TO GOVERN—ARTICLE 4812, REVISED STATUTES—By virtue of article 4812, Revised Statutes, and section 5 of the final title, parties to an action of trespass to try title commenced before those statutes took effect, are to have their rights determined according to the law as it existed at the time the suit was instituted.

4. SAME—Except as to the course of practice or procedure, the provisions of the old law are to govern in such a suit. The parties may, in its prosecution or defense, plead and prove the same matters that they could have urged, had the cause been tried under the former law.

5. PRACTICE—RIGHT TO OPEN AND CONCLUDE—Where, in the trial of a cause, there is one affirmative fact important to a recovery by the plaintiff, and which is not admitted by the defendant, the plaintiff has the right to open and conclude.

APPEAL from Houston. Tried below before the Hon. J. P. Stevenson, special judge.

August 3, 1879, Mrs. V. E. Petty, joined by her husband, B. M. Petty, and her sister, Miss L. R. Steed, brought this suit of trespass to try title against the tenants of their brother, W. M. Steed, for a tract of two hundred and twenty acres of land in Houston county. W. M.

Steed defended as landlord. He disclaimed, except as to the north-west and southwest quarters, or one hundred and ten acres; admitted that the legal title was in plaintiffs for the whole tract, but, as to the one hundred and ten acres claimed, set up a verbal partition, improvments in good faith, etc., and that plaintiffs were equitably estopped from recovering the land.

Plaintiffs, by supplemental petition, specially excepted, denied the partition, etc., and alleged the coverture of Mrs. Petty and minority of L. R. Steed. Shortly after the suit, L. R. Steed married M. C Dupuy, and died October 14, 1880, without issue; her husband administered on her estate, and, with Petty and wife, prosecuted the suit. The exceptions of plaintiffs were not acted upon by the court below.

W. G. Steed, father of the parties, on October 3, 1868, conveyed to E. T. Steed, his wife, the two hundred and twenty acres sued for, which was all the land he owned, except one hundred acres. The deed recites a consideration of $1,550. March 29, 1869, Mrs. Steed made a will bequeathing all her property to her two daughters, Mrs. Petty and L. R. Steed, except that $200 were to be paid to her grand-daughter, Mamie West, when certain land in Alabama was sold. The will mentions money and land left to the testatrix by her father, the land being eighty acres in Perry county, Alabama, also her interest in her brother's estate, and mentioned some personal property, but does not mention the land in controversy. The will appointed Mrs. Petty executrix. It was not probated until July 24, 1879. Mrs. Steed died in the fall of 1869, leaving four children, M. D. Steed, the oldest, Mrs. Petty next, Wm. M. Steed and L. R. Steed the youngest. Mamie West was the only child of a deceased daughter, and was five or six years old at the time. Mrs. Petty married before her mother's death. L. R. Steed was born January 12, 1855, and at the time of the alleged division was sixteen, and Wm. M. Steed twenty years of age.

M. D. Steed testified: In January or February, 1870, the two hundred and twenty acres sued for, and the cattle and a horse and wagon left by mother, were divided equally among the four children. Mother left a will. Father sent for it. I don't know that I read it or heard it read, but it gave all of her property to our sisters. Mrs. Petty and L. R. Steed said that if they got all of mother's property, Wm. Steed and I would get father's property, and it was agreed that the personal property and this land should be divided among all of us, and that we should in same manner divide the property that father might leave at his death. The division was made at father's place. B. M. Petty, L. R. Steed and Wm. Steed, myself and Geo. Adair, our cousin, were present. Adair, who is dead, represented L. R. Steed. In the divi-

sion, I got the southwest, William Steed the northwest, Mrs. Petty the northeast, and L. R. Steed the southeast quarter. I think my tract was the poorest and L. R. Steed's the best; the division was a fair one. I went on my tract in July, 1870; cleared and fenced six or eight acres, and next year cultivated eight or ten acres. Wm. Steed improved his tract in 1871, and cleared and fenced ten or fifteen acres. In 1873, I sold my tract to Wm. Steed for $100 cash and a bale of cotton worth $60. Ever since 1870, some portion of the land has been cultivated. After I sold to Wm. Steed he had possession of the northwest and southwest quarters, and claimed the land as his own. He added improvements, so that for three or four years before this suit he had thirty-five or forty acres in cultivation, and had put up two cotton houses. The land was all unimproved until William Steed and I improved it. The portions allotted to Mrs. Petty and L. R. Steed have never been improved. We never got a deed to the land ; have never heard Mrs. Petty complain about the division, or claim the land. I built a house on L. R. Steed's portion, which I thought was on my own land, but she let me keep the improvements and five acres of her land. I paid taxes on my portion before I sold to Wm. Steed. When Wm. Steed went to North Texas, he left me in charge of his land, and had tenants on it. Wm. Steed and father returned to their old home in the spring of 1880 ; father died in 1882. He gave William and myself his homestead, which consisted of one hundred acres of land. After his death, his personal property was divided between Mrs. Petty, Mamie West and myself.

I can't say I ever saw Wm. Steed with the will. I don't know that he ever saw it or heard it read, but I saw it or knew its contents. It was understood that mother had given our sisters all her property. I never got any money from father's estate. Wm. Steed told me that father gave him $450. No lines were run on the land. A creek divides it east and west, and the division was by quarters.

W. M. Steed, the defendant, testified: The division of the land, etc., was made in January or February, 1870, as testified to by M. D. Steed. I was then twenty years old. L. R. Steed had first choice, I had next choice, Mrs. Petty third, and M. D. Steed last. Geo. Adair, who is now dead, acted for L. R. Steed, who was present. Before the division M. D. Steed went to Mrs. Petty's, but she didn't attend. Her husband was present. We took possession, made improvements, and I purchased M. D. Steed's tract, as testified to by him. Mrs. Petty and L. R. Steed knew of my purchase of M. D. Steed. I never heard any objection to the division, from either of my sisters, until after this suit. I never got a deed from either them or M. D.

Steed.  I took possession of the land because I thought it was mine, and cultivated it regularly up to March, 1879, when I went to North Texas.  No possession of it, or rent, was ever demanded by either of my sisters.  I claimed the land openly, and offered it for sale in the neighborhood.  After the division, I paid taxes on fifty-five acres up to the time I bought M. D. Steed's interest, and since that time I have regularly paid taxes on the one hundred and ten acres claimed by me.  L. R. Steed rendered and paid taxes on fifty-five acres.  I never saw the will or heard it read until the first trial of this case, and, at the time of the division, I did not know there was a will, but knew that my sisters said mother had given them the land. When I went to North Texas, in March, 1879, I left M. D. Steed in charge of my land, and he and two others cultivated it as my tenants. After this I received a letter from M. D. Steed, which was the first news I had about the suit, and the first time I ever heard that my sisters set up any claim to the land.  I returned to the place in the spring of 1880, and have since cultivated it.  Father gave me and M. D. Steed his one hundred acres of land, after his death.  We divided his personal property between M. D. Steed, Mrs. Petty, Mamie West, and myself.  Sister L. R. Steed died without leaving any child, and we did not include plaintiff, Dupuy, in this division.  Some two or three weeks before his death, father gave me $350.  L. R. Steed married in the fall of 1879, and was twenty-four years old at the time. She and Mrs. Petty knew of my improving the land, and of my purchase of M. D. Steed's interest.  B. M. Petty was on the land when I was clearing it.

B. M. Petty testified that there were about thirty-five acres of the land in a condition for cultivation, the annual rental value of which was about $5.00 per acre; that no part of the land was improved until M. D. and W. M. Steed improved it in 1870; that after 1870, he rendered for, and paid taxes on, for his wife, only fifty-five of the two hundred and twenty acres ; that the portion of the land not claimed by W. M. Steed had never been improved; and that he had never demanded possession or rent of M. D. or W. M. Steed.

Mrs. Petty deposed that there was no agreement to divide the land, and that defendant knew of the will.  She admitted that the cattle were divided, and said that she was present at that division and represented herself; and she and B. M. Petty, her husband, both testified that her brothers took possession of the land without their consent.

It appears that at the time of the alleged contract and partition between the brothers and their two sisters, one of the latter was a married woman and the other a minor about sixteen years old.  The value

of the improvements placed upon the land by the defendant, and him under whom he claimed, was shown to be about $450, and the annual use and occupation of the land to be worth about $175. It further appears that the defendant paid all the taxes on the land after its occupancy by him, and that the plaintiffs paid none.

The court refused the charges asked by the defendant, to the effect that, if defendant was a possessor in good faith, the jury should not assess rents for any improvements made on the land by him or M. D. Steed, and if neither the plaintiffs, nor any one for them, had paid the taxes on the land, and the defendant had regularly paid such taxes, they should assess nothing for its use and occupation; and, instead, it charged the jury that if the defendant was a possessor of the land in good faith, and he and those under whom he claimed had made thereon valuable and permanent improvements, they should estimate the then value of such improvements as were so made prior to the institution of the suit, not exceeding the amount to which the value of the land was actually increased thereby, and find that amount for the defendant, and that they should also, from the evidence, estimate the value of the use and occupation of the land for the time the defendant had been in possession thereof, commencing at a date not earlier than two years prior to the institution of the suit, and reckoning down to the time of the trial, and find that amount for the plaintiffs.

The cause was tried by jury March 20, 1885. The jury found in favor of the plaintiffs upon their claim to the land, and assessed the rent at $450. They also found the defendant to have been a possessor in good faith, and assessed the value of his improvements at the same figures. The court rendered judgment in favor of the plaintiffs for the land and for costs. Defendant appealed.

*J. R. Burnett*, for appellant, on the question of estoppel, cited: Hartwell *v.* Jackson, 7 Tex. 581; Allen *v.* Urquhart, 19 Tex. 480; Klein *v.* Glass, 53 Tex. 44; Fitzgerald *v.* Turner, 43 Tex. 87; Ryan *v.* Maxey, 43 Tex. 192; 2 Bishop's Married Women, sec. 490; Pomeroy Eq. Jur., sec. 814; Bigelow on Estop., 3 ed., 513.

On enforcement of parol gift, accompanied with possession, improvements, etc., he cited: Murphy *v.* Stell, 43 Tex. 131, 135; Hendricks *v.* Inediker, 30 Tex. 296; Curlin *v.* Hendricks, 35 Tex. 225; Neale *v.* Neale, 9 Wallace 8.

On ratification, he cited: Bingham *v.* Barley, 55 Tex. 281, and cases cited; 2 Pomeroy Eq. Jur., secs. 815, 818; Schouler's Dom. Rel., 624; Green *v.* Wilding, 59 Iowa 679; s. c., 13 N. W. Rep. 761; Keil *v.* Healey, 84 Ill. 104.

That this suit having been brought before the Revised Statutes took effect, the rights of the parties were to be determined according to the law as it existed at the time the suit was instituted, and the court should have given the charges asked by the defendant, touching the plaintiffs' right to recover rent, he cited : Pas. Dig., 5306 ; R. S., art. 4814, et seq ; Bailey v. White, 13 Tex. 118 ; Report of Commissioners to Revise and Digest Laws (1879), 32.

On right to open and conclude, he cited : Rules for District Court, No. 31 ; Ney v. Rothe, 61 Tex. 374.

*Nunn & Denny,* for appellees, on the question of estoppel, cited : Bigelow on Estop., 443, et seq ; 1 Story Eq. Jur., 77, sec. 64.

On right to open and conclude, they cited : Alston v. Cundiff, 52 Tex. 460.

WILLIE, CHIEF JUSTICE.—Among other requisites, two must have concurred to create an estoppel :

1. There must have been a false representation or concealment of material facts.

2. The party to whom the representation was made, or from whom the material facts were concealed, must have been ignorant of the truth of the matter. Bigelow on Estop., 484 ; 2 Pomeroy Eq. Jur., 805.

In making the partition of the two hundred and twenty acres of land among the children of Mrs. E. T. Steed, to wit : Mrs. V. E. Petty, Miss L. R. Steed, M. D. Steed and W. M. Steed, there was no material fact of which each one of these parties did not have notice. The only existing fact, the ignorance of which might have influenced the conduct of M. D. and W. M. Steed in treating the shares partitioned to them as their own property, was the fact that the title to the land was in Mrs. Petty and Miss Steed alone, and that the brothers, Steed, had no right in it whatever. M. D. Steed knew this fact, for he was acquainted with the contents of his mother's will, in which she devised to his sisters, above named, the entire tract partitioned. W. M. Steed had also been informed that his sisters said that their mother had given them the land.

So far, then, from concealing or falsely representing the state of the title, Mrs. Petty and Miss Steed seem to have wished their brothers to know its exact condition. All parties had notice, then, at the date of the partition, that it conveyed no title to M. D. and W. M. Steed, and would not prevent a recovery from them of their shares, should their sisters choose to assert, by suit, their title to the whole tract. In fact, the brothers Steed do not seem do have relied upon holding

their shares through any title originally held by them in the land. Their reliance seemed to be upon some kind of understanding that the property derived by their sisters from their mother should then be divided amongst the four children, and their father's property, if given to M. D. and W. M. Steed, should be subjected to a like partition. At best, this was no more than a verbal agreement which appears never to have been carried out, so far as dividing the property of the father was concerned. It was not binding upon Mrs. Petty, who was a married woman, nor upon Miss Steed, who was a minor, especially as the consideration for making it had wholly failed. It certainly did not operate as an estoppel.

Their condition of coverture and minority made Mrs. Petty and Miss Steed still less liable to be estopped under the facts of this case. It is now generally, if not universally, held that married women and infants are not estopped *in pais,* unless their conduct has been intentional and fraudulent. Bigelow on Estop. 510, and authorities cited. This is well settled in our courts. Crayton *v.* Munger, 9 Tex. 285; Fitzgerald *v.* Turner, 43 Tex. 79.

We have seen that no fraud upon the defendants below was ever attempted by Mrs. Petty and Miss Steed, and they were, consequently, not estopped from claiming the land, the title to which had never passed out of them in any manner recognized as legal.

Upon the undisputed facts of the case, the judge below was authorized to charge the jury to find that the plaintiffs were not estopped from asserting their legal title to the land.

This suit was begun before the Revised Statutes took effect, and the possession of the appellant commenced several years previous to that time. By virtue of art. 4812 of the Revised Statutes, and sec. 5 of the final title, parties to an action like the present, commenced before the Revised Statutes took effect, are to have their rights determined according to the law as it existed at the time the suit was instituted. They can plead and prove, in the prosecution or defense of such suit, the same matters which they could have urged had the case been tried under the former law. Except as to the course of practice or procedure, the provisions of the old law, as to actions of trespass to try title, were to govern in all respects. This we held in the case of Mitchell *v.* Baldems, decided at the late Tyler term—not reported.

Under the former law the plaintiffs were entitled to recover for the use and occupation of the land, with the improvements included, and were not to be confined to such rents as accrued only within two years before the commencement of the suit. All claim for rents, however, could be defeated by proof that the state taxes had been paid by the

defendant, and had not been paid by the plaintiffs.    There was proof
in this case strongly tending to show that all taxes upon the land in
controversy, accruing since the partition, had been paid by the appel-
lant and his grantor, and that none had been paid by the appellees.
The court, thereupon, should have so instructed the jury as to defeat
the claim of the plaintiffs below as to rents, in case they believed that
no one had paid taxes for them on the one hundred and ten acres in
controversy, and that the defendants had paid these taxes.

The court correctly held that the appellant was not entitled to open
and conclude the case. There was certainly one affirmative fact impor-
tant to a recovery by the plaintiffs, viz., the value of the use and occu-
pation of the land, which was not admitted by the defendants; and,
as to this fact, at least, the burden of proof was upon the plaintiffs
below.

But for the error of the court, as stated above, the judgment must
be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered February 16, 1886.]