COCKRELL v. ELLISON et al.

(Court of Civil Appeals of Texas. March 25, 1911. Rehearing Denied April 29, 1911.)

1. TRIAL (§ 25*)—RIGHT TO OPEN AND CLOSE—JOINT DEFENDANTS—ADMISSIONS.

Where only one of two joint defendants admitted plaintiff's cause of action as alleged, it was error for the court to accord the defendant so admitting the right to open and close, limiting plaintiff's right to open and close as to the other defendant only under court rule 31 (67 S. W. xxiii), providing that an admission of plaintiff's cause of action to entitle a defendant to open and close must be made by all the defendants, if there be more than one.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 44–75; Dec. Dig. § 25.*]

2. FRAUD (§ 59*)—FRAUDULENT REPRESENTATIONS—ASSIGNMENT OF LEASE—DAMAGES.

Where certain notes were executed for an assignment of a lease to cover the value of certain plowing done by the lessee, and not for rent on the premises, the measure of the assignee's damages because of the lessor's misrepresentations that the land was reasonably free from Johnson grass was the difference in the rental value of the land in the condition it was, as actually cultivated and used by him, and in the condition it was represented to be, and not the value of the labor done by him and other costs in cultivating and harvesting the crop aft-

er deducting the value of the crop actually harvested.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 60–62, 64; Dec. Dig. § 59.*]

3. LANDLORD AND TENANT (§ 159*)—BREACH OF LEASE—DAMAGES.

Where the landlord failed to fence a tract of land as agreed leased for peanut culture in time to enable defendant to plant the crop, the tenant's measure of damages was the reasonable value of the peanuts which defendant would be reasonably expected to have raised on the premises for the year, less the reasonable cost of cultivating and marketing the crop.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 573, 611; Dec. Dig. § 159.*]

4. TRIAL (§ 251*)—INSTRUCTIONS.

Where a note was given for supplies advanced to the maker on plaintiff's order, and the only contention in defense in an action thereon was that the chattel mortgage given to secure the note included specified personal property not intended to be mortgaged by the maker, an instruction that a recovery thereon should be denied if the jury found that the mortgage was a forgery as alleged by the mortgagor was erroneous.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. § 251.*]

Error from Jones County Court; Jas. P. Stinson, Judge.

Suit by J. V. Cockrell against B. W. Ellison and others. Judgment in favor of defendants J. W. Bogar & Co. and awarding defendant Ellison damages on a cross-complaint, and plaintiff brings error. Reversed and remanded.

Ben L. Cox, for plaintiff in error. C. L. Hailey and J. W. Boynton, for defendants in error.

CONNER, C. J. The plaintiff in error instituted this suit against B. W. Ellison and J. W. Bogar & Co., alleging, in substance, the execution by B. W. Ellison of three certain promissory notes, one for $25, one for $125, and one for $100, each of which was secured by a separate chattel mortgage on certain personal property. The plaintiff sought judgment upon the notes and to foreclose mortgages, and further alleged that the defendant, Ellison, was a tenant and had raised a crop upon premises specified during the year 1908, and he prayed for recovery for the rents and a foreclosure of the landlord's lien. The plaintiff further alleged that two bales of the cotton raised by the defendant, Ellison, and upon which the plaintiff had a lien had been sold to and converted by J. W. Bogar & Co. and judgment was sought against this company for the value of the cotton so converted amounting to $93.50. The defendant Bogar & Co. answered by a general denial, and specially pleaded that the plaintiff had no landlord's lien on said bales of cotton and set up a mortgage in its favor alleged to be prior in point of time to that of the landlord's lien, if any he held. The defendant, Ellison, also answered by a general denial,

and specially pleaded under oath that the mortgage which plaintiff sought to foreclose as security for the $100 note was a forgery, in that through fraud he was induced by plaintiff's agent to sign a mortgage containing property on which he did not agree to give a lien, and which plaintiff's agent at the time represented was not contained in the mortgage; that the $25 and $125 notes were procured by fraud, in that they were given for a lease upon 100 acres of land that plaintiff's said agent falsely and fraudulently represented to be free from Johnson grass. This defendant further pleaded in reconvention that in February, 1908, the plaintiff, acting by his said agent, had entered into a contract, by the terms of which the defendant, Ellison, was to have the possession of a certain other 100 acres of land and all of the crops raised thereon for clearing and putting the same in cultivation; that among other things, by the terms of the contract the plaintiff was to fence the land, but that he failed to do so in time to enable the defendant to plant in peanuts as intended certain other portions thereof that he had prepared for the purpose, and he sought to recover $450 by reason of this failure. He further sought to recover several hundred dollars as damages because of the diminished yield in crop, costs of labor, etc., upon the 100 acres of land for which said $25 and $125 notes had been given, designated in the answer and throughout the trial as the "Pinkston lease." The trial before the court and jury resulted in a verdict and judgment in favor of both defendants denying recovery upon the notes and upon the cause of action asserted against J. W. Bogar & Co., and awarding to defendant, Ellison, on his cross-plea $266.25 as damages against the plaintiff.

[1] Error is assigned to the action of the court in permitting the defendant, Ellison, to open and conclude in the introduction of the testimony and argument of counsel, and we think the assignment must be sustained. This advantage was sought by an admission on the part of the defendant, Ellison, "that the plaintiff has a good cause of action as set forth in plaintiff's petition, except so far as it may be defeated in whole or in part by the facts of the answer constituting a good defense which may be established on the trial," but defendant Bogar & Co. made no such admission, and rule 31 (67 S. W. xxiii), prescribed for the government of our trial courts, expressly provides that the admission must be made by "all of the defendants, if there should be more than one." While the pleadings of the two defendants were not the same in all particulars, the interest of both in defeating the plaintiff of all recovery was identical, and the violation of the rule was not cured by the action of the court in permitting the plaintiff to open and conclude as to the defendant Bogar & Co. The rule was evidently intended to preclude a confusion that such a practice would naturally tend to

produce. Moreover, the admission required by the rule implies an admission of every fact necessary to establish the cause of action as set forth in the plaintiff's pleading, and the defendant can prevail only upon pleading and proving such facts as will entitle him to the judgment notwithstanding the truthfulness of the plaintiff's pleadings. It is accordingly doubtful if in any event the rule can be properly applied in view of the defendant Ellison's plea of forgery which was insisted upon throughout the trial and which in legal effect amounted to a denial of the execution of one of the principal instruments upon which the plaintiff relied. See Ferguson-McKinney Dry Goods Co. v. City Nat. Bank, 31 Tex. Civ. App. 238, 71 S. W. 604; Steed v. Petty, 65 Tex. 490; Sanders v. Bridges, 67 Tex. 93, 2 S. W. 663.

[2] Error is also assigned to the tenth paragraph of the court's charge, which is as follows: "The measure of damages for fraudulently inducing the execution of a contract is the actual outlay of the injured party contributable to such fraudulent conduct. If you believe from a preponderance of the evidence that the defendant, B. W. Ellison, was fraudulently induced by plaintiff's agent, W. V. Triplett, to undertake to work the Pinkston 100 acres, and by 'fraudulently induced' is meant that the plaintiff's agent, W. V. Triplett, represented said land to be practically free from Johnson grass, if he did so represent, and that such representation was false at the time, if it was false, and that the defendant, Ellison, acted upon the faith of such representations, and; induced thereby, undertook to cultivate same for the year 1908, and took upon himself the obligation of the $25 and $125 notes, if you find he did so act, then you will determine whether or not the defendant was damaged by such representations, and, in determining the defendant's damages, you are instructed that the measure of defendant's damages would be the actual outlay made by the defendant legitimately attributable to such fraudulent contract, and in determining such outlay, if any, you will consider the reasonable value, if any, of the labor expended on said lease, if any, the amount he contracted to pay for said lease, if any, and also the value of the crops raised by defendant, if any, and, after ascertaining said different items you will deduct from the amount of the outlay of defendant, if any, the amount of all benefits he has received, if any, by reason of having entered into said contract, and the difference would be the measure of such damages." We think the charge quoted is erroneous and misleading in view of the circumstances of this case. Defendant, Ellison, not only testified, but it was also alleged, in substance, in his special plea, that the $25 and $125 notes were but substitutes for promissory notes in like sums originally executed and delivered to one Pinkston, who it seems had theretofore secured a lease from the plaintiff in this

suit for the year 1908 for the 100 acres of land alleged herein to have been poisoned with Johnson grass. Appellee testified that the lease was purchased by him from Pinkston, and the evidence suggests that the notes were given in part payment for the plowing and preparation of the land already done by Pinkston at the time of defendant Ellison's purchase. The defendant also testified to the value of the plowing and other labor done by him in the cultivation of the crop as well also as to the particular crops raised upon the premises, and the theory of the measure of defendant's damage evidently adopted upon the trial of the case and reflected in the charge we have quoted was that the value of the crops actually raised by defendant, Ellison, should be deducted from the sum total of the notes and the value of Ellison's labor, etc., in cultivating and harvesting the crop, the difference to constitute the amount of Ellison's recovery.

We have been unable to see how in any event the notes referred to should be considered in estimating defendant Ellison's damages, if any. It seems quite clear that they were not executed as rental for the land, for, in addition to the allegation and testimony above referred to, defendant testified that as rental he was to pay the usual one-third and one-fourth of the crops that should be raised upon the land. Nor do we think the defendant was entitled to recover the value of the labor done by him in his behalf and other costs in cultivating and harvesting the crop, deducting merely the value of the crop actually harvested. In other words, the measure of damages submitted by the court was wholly wrong. The case is not one where the complainant was evicted or wholly prevented from the cultivation of land leased by him. On the contrary, defendant plowed, planted, harvested, and utilized the crops, as if no cause of complaint existed, and under such circumstances we think his measure of damage, if entitled to recover at all, was the difference in the rental value of the land in the condition it was as actually cultivated and used by him and such rental value in the condition in which he charges it was represented to be.

[3] Error is also assigned to the ninth paragraph of the court's charge, which was to the effect that in event the jury found that, by the terms of the contract with the plaintiff, plaintiff was to fence the 100 acres of "shinnery" land and that he had failed to do so, the measure of defendant Ellison's damage "would be the reasonable market value of the peanuts which defendant would be reasonably expected to have raised upon said premises for the year 1908." Assuming the contract to be as alleged by the defendant, Ellison, the charge was, we think, substantially correct, save that the jury should have been instructed to deduct the reasonable costs of cultivating and marketing the crop. Waggoner v. Moore, 45 Tex. Civ. App. 308, 101 S. W. 1058.

[4] The sixth paragraph of the court's charge is also objectionable, in that the jury may have understood therefrom that plaintiff should be denied a recovery upon the $100 note in event they found that the mortgage alleged to have been given as security therefor was a forgery as alleged by Ellison. We do not understand defendant, Ellison, to make any such complaint in his pleadings. It is undisputed that this note was given for supplies advanced to him upon the order of the plaintiff, Cockrell, and the only contention in respect to this note was that the mortgage given to secure the same included certain specified personal property not intended to be included by the defendant, Ellison, but, inasmuch as the charge can be easily worded upon another trial so as to correct any liability to mislead, we will not further discuss the question.

We conclude that the judgment should be reversed and the cause remanded.