LUCKENBACH et al. v. THOMAS et al.
(No. 5199.)

(Court of Civil Appeals of Texas. San Antonio.
April 1, 1914. Rehearing Denied
April 29, 1914.)

1. EVIDENCE (§ 417*)—PAROL EVIDENCE—AD-
MISSIBILITY.

Where a grantor sues on notes given for
the price and for a foreclosure of the vendor's
lien retained in the deed, the notes and deed ev-
idence a completed written contract, and all
prior negotiations and agreements are merged
therein, so that they cannot be proved by parol.

[Ed. Note.—For other cases, see Evidence,
Cent. Dig. §§ 1874–1899; Dec. Dig. § 417.*]

2. VENDOR AND PURCHASER (§ 274*)—FORE-
CLOSURE OF VENDOR'S LIEN—DEFENSES.

A grantee resisting the payment of notes
for the price and the foreclosure of a vendor's
lien retained by the deed cannot go behind the
notes and deed; and a pleading relying on the
omission of a stipulation in the prior contract
of sale is insufficient.

[Ed. Note.—For other cases, see Vendor and
Purchaser, Cent. Dig. §§ 769–771; Dec. Dig. §
274.*]

3. REFORMATION OF INSTRUMENTS (§ 16*)—
GROUNDS—FRAUD—ACCIDENT—MISTAKE.

A deed cannot be reformed by the addition
of a stipulation therein, unless the stipulation
was omitted by fraud, accident, or mistake.

[Ed. Note.—For other cases, see Reformation
of Instruments, Cent. Dig. § 68; Dec. Dig. §
16.*]

4. EVIDENCE (§ 419*)—PAROL EVIDENCE—CON-
SIDERATION.

Where a guaranty of a vendor that water
was obtainable on the land was part of the con-
sideration for the purchase-money notes execut-
ed by the purchaser, the guaranty was a con-
tractual one, and could not be proved by parol
in a suit on the notes and for the foreclosure
of the vendor's lien retained in the deed.

[Ed. Note.—For other cases, see Evidence,
Cent. Dig. §§ 1912–1928; Dec. Dig. § 419.*]

5. REFORMATION OF INSTRUMENTS (§ 18*)—
MISTAKE OF LAW.

Where the parties to a contract discovered
before its execution that a stipulation was
omitted therefrom, but they believed, on the ad-
vice of an attorney, that the stipulation was,
nevertheless, binding, the contract would not be
reformed so as to include the stipulation, unless
either party was misled by the other or by the
intentional misrepresentation of the attorney.

[Ed. Note.—For other cases, see Reformation
of Instruments, Cent. Dig. §§ 72, 73; Dec. Dig.
§ 18.*]

6. VENDOR AND PURCHASER (§ 110*)—CON-
TRACTS—EXECUTED CONTRACTS—EFFECT.

Where there was a breach of warranty con-
tained in a contract of sale before the delivery
of the deed, the purchaser, accepting the deed
containing the warranty with knowledge of the
breach, could not rescind, but could merely re-
cover damages for the breach.

[Ed. Note.—For other cases, see Vendor and
Purchaser, Cent. Dig. §§ 196, 197; Dec. Dig. §
110.*]

7. FRAUD (§ 23*)—ACTS CONSTITUTING.

Where a purchaser could determine the
facts of sufficiency of a water supply for irri-
gation as well as the vendor, and he refused to
buy from an agent because he would not guar-
antee the water supply and he investigated the
water supply in the county before the pur-
chase, he did not rely on the vendor's represen-
tations as to the permanency of the water sup-

ply, and could not recover on the theory that
the vendor's representations were fraudulent.

[Ed. Note.—For other cases, see Fraud, Cent.
Dig. §§ 20, 23; Dec. Dig. § 23.*]

8. VENDOR AND PURCHASER (§ 114*)—FRAUD—
RESCISSION.

Where a purchaser, with knowledge that a
well, guaranteed by the vendor to supply the
necessary water for irrigation, flowed so poorly
that irrigation on all but a small part of the
land had to be abandoned, made improvements
on the premises and partial payments of the
price and interest without objections, he elect-
ed not to repudiate the sale, and he could not
compel a rescission.

[Ed. Note.—For other cases, see Vendor and
Purchaser, Cent. Dig. §§ 202–204; Dec. Dig. §
114.*]

9. VENDOR AND PURCHASER (§ 284*)—FRAUD
—RESCISSION—DELAY—INSTRUCTIONS.

In an action on purchase-money notes and
for the foreclosure of a vendor's lien retained in
the deed, defended on the ground of fraud and
breach of warranty, an instruction submitting
the issue of unreasonable delay in complaining
of the fraud or the breach as a defense, and stat-
ing that a finding of unreasonable delay would
not prevent a finding for the purchaser, if oth-
erwise entitled to recover, and an instruction
that, if the jury found for a rescission, and
found the facts presented in the instruction
submitting the issue of fraud, the jury should
allow such damages as were sustained by the
purchaser, were objectionable, as failing to make
the jury understand that unreasonable delay in
complaining of the fraud was an absolute de-
fense to a demand for rescission.

[Ed. Note.—For other cases, see Vendor and
Purchaser, Cent. Dig. §§ 796–799; Dec. Dig. §
284.*]

10. CANCELLATION OF INSTRUMENTS (§ 50*)—
REPUDIATION OF CONTRACT WITHIN REA-
SONABLE TIME AFTER DISCOVERY OF FRAUD
—QUESTION FOR JURY.

Whether one complaining of fraud inducing
a contract repudiated the contract within a rea-
sonable time after discovery of the fraud, so as
to justify rescission, is frequently for the jury,
and in such cases the court must submit the is-
sue.

[Ed. Note.—For other cases, see Cancellation
of Instruments, Cent. Dig. §§ 105, 106; Dec.
Dig. § 50.*]

11. APPEAL AND ERROR (§ 237*)—QUESTIONS
REVIEWABLE—INSTRUCTIONS—OBJECTIONS.

Where a party did not challenge the suffi-
ciency of the evidence to raise an issue by ask-
ing a peremptory instruction, he could not, on
appeal, complain of a charge submitting the is-
sue.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. § 1302½; Dec. Dig. § 237.*]

12. COVENANTS (§ 130*)—FRAUD—DAMAGES.

The rule that the measure of damages
which a purchaser may recover is the differ-
ence between the consideration given for the
land and the value thereof applies only in cases
where the vendor was guilty of fraud inducing
the purchase, and does not apply in cases of
the vendor's breach of a warranty.

[Ed. Note.—For other cases, see Covenants,
Cent. Dig. §§ 245–253, 255, 256, 257; Dec. Dig·
§ 130.*]

13. APPEAL AND ERROR (§ 1068*)—HARMLESS
ERROR—OMISSION IN INSTRUCTIONS.

Where the jury found that a purchaser was
entitled to rescind on the ground of the vendor's
fraud, the failure to submit any measure of
damages for fraudulent representations, in the
event the purchaser had delayed for an unrea-
sonable time before complaining of the fraud,

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

or had approved the purchase after knowledge of the fraud, was not reversible error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4225–4228, 4230; Dec. Dig. § 1068.*]

**14. VENDOR AND PURCHASER (§ 127*)—RESCISSION—RECOVERY.**

A purchaser cannot, after repudiating the purchase on the ground of the fraud of the vendor, continue to make improvements and recover therefor in a suit to rescind the purchase.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 231; Dec. Dig. § 127.*]

**15. FRAUD (§ 52*)—REPUTATION FOR TRUTH AND VERACITY—ADMISSIBILITY.**

Where the issue of fraudulent representations, made by a vendor to a purchaser, could only be determined by virtue of the credit to be given to the testimony of the parties as to whether representations were made and whether they were true or false, evidence of the general reputation of the vendor for truth and veracity was inadmissible.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 48; Dec. Dig. § 52.*]

**16. TRIAL (§ 25*)—RIGHT TO OPEN AND CLOSE —ADMISSIONS BY DEFENDANT.**

Where, in a suit on purchase-money notes and to foreclose a vendor's lien retained in the deed, the purchaser admitted the execution of the notes and liability thereon, but did not admit the execution and delivery of the deed, the vendor had the right to open and close the case.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 44–75; Dec. Dig. § 25.*]

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Action by C. A. Luckenbach and others against M. S. Thomas and another. From a judgment for defendants, plaintiffs appeal. Reversed and remanded.

J. F. Carl, of San Antonio, for appellants. Taliaferro, Cunningham & Birkhead, R. P. Coon, and F. R. Williams, all of San Antonio, for appellees.

MOURSUND, J. Appellants, C. A. Luckenbach, A. J. Luckenbach, Adolph Wendler, Bruno Wendler, Henry Wendler, and John F. Nooe, sued M. S. Thomas and Ira Paxton upon four promissory notes dated November 19, 1909, payable to plaintiffs, executed by M. S. Thomas, due respectively on the 20th day of September of the years 1910, 1911, 1912, and 1913, the first three being for $1,466.67 each, and the fourth for $660, all bearing 7 per cent. interest per annum, payable annually, and providing for 10 per cent. attorney's fees if placed in the hands of an attorney for collection after maturity, and further providing that failure to pay interest on any note when due should, at the option of the holder, mature all notes. Plaintiffs alleged that said notes were given in part payment for 200 acres of land out of survey 79, grantee J. H. Gibson, certificate 348, in Dimmit county, the field notes of said land being given, and sought a foreclosure of the vendor's lien retained in the deed executed by them to said Thomas for such land. It was further alleged that default had been made in the

payment of interest and the principal of the note first maturing, for which reason all notes had been declared due; that no payments had been made, except $260 upon note No. 1 on November 19, 1909; that the land had been conveyed by Thomas to Paxton, who had assumed the payment of the notes. The case was dismissed as to Paxton.

M. S. Thomas answered by general demurrer, general denial, and for special answer said: That plaintiffs in August, 1909, composed the "Wendler-Luckenbach Land Company," and A. M. Delcambre was their agent; that defendant was desirous of buying and developing an irrigable farm in Southwest Texas, and authorized and instructed T. C. Thomas to look at lands in that section, and, if he could find a tract upon which there was, or could be procured, a flowing well of permanence and sufficient strength to irrigate the entire tract, and such tract could be obtained for a reasonable price, then to purchase the same for defendant; that such desire on the part of M. S. Thomas, together with the authority of T. C. Thomas, was made known to said Delcambre; that Delcambre told T. C. Thomas he had a tract of land for sale such as M. S. Thomas wanted, and showed him the land described in plaintiff's petition; that T. C. Thomas there met C. A. Luckenbach, of the Wendler-Luckenbach Land Company, and told him that M. S. Thomas wanted only land upon which a flowing well of abundant strength could be had; that Luckenbach represented that defendant could get a well on said land as strong as a certain well on other lands owned by said company, which well was then flowing at the rate of 1,200 gallons per minute, and then and there, before defendant had invested any money in said land, guaranteed that, if defendant purchased said land, defendant would get such a well on said land as the one shown him, and that such well would continue to flow such stream for all time to come, and, further, that such well would be sufficient to put water on every part of said land without the necessity of pumping; that said Luckenbach advertised the lands of said company, stating that the flowing wells on the same were guaranteed by him, and the firm of Delcambre, Jones & Co., agent for plaintiffs, advertised said lands, with plaintiffs' knowledge and consent, as being in the "Carrizo Springs artesian belt, where irrigation is accomplished by drilling wells through an impervious cap rock to tap a limitless supply of purest water that is forever driven by natural pressure high above the surface," and described a well on the lands of said company as having been completed eight years prior thereto by A. Eardley at a cost of $850, and as having a flow of 1,260 gallons per minute, which it had retained for eight years without any sign of weakening, and represented that such

a well, with a reservoir to store the water, would easily irrigate 400 acres of land, and that lands upon which a well could be procured could be sold by said Delcambre, Jones & Co. at from $35 to $50 per acre; that said advertisements and literature, and the representations contained therein, were brought to the attention of T. C. Thomas in the fall of 1909, and before the contract was made to purchase. any of said lands for defendant; that such representations were made for the purpose of inducing T. C. Thomas to purchase said land for defendant, and that they were material, and were believed and relied upon by T. C. Thomas, and, but for the making thereof and his belief therein, said Thomas would not have purchased said land for defendant; that said representations were not true; that T. C. Thomas, relying upon said representations, on September 20, 1909, entered into a written contract to purchase 160 acres of plaintiffs' land for defendant, and later, to wit, in December, 1909, a 40-acre tract was verbally added to said contract, the 200 acres thus contracted for being the land described in plaintiffs' petition; that T. C. Thomas had no knowledge of the flow of water necessary for irrigation purposes, and relied upon Luckenbach' for such information, which fact Luckenbach knew; that it was the intention of all parties to the written contract that the same should, by its terms, guarantee that the well to be drilled on the land therein described should furnish a flow of water sufficient to irrigate the entire tract, and that the flow should be permanent, and, if such contract does not express such intention, or if it expresses an intention not in harmony with the same, then the failure to express such intention, or the expression of such contrary intention, is the result of fraud on the part of the Wendler-Luckenbach Land Company, or accident, or mistake on the part of the scriveners, or on the part of the parties to said contract; that said contract was consummated by delivery of deed conveying the land in question signed by plaintiffs, dated November 19, 1909, and the payment by defendant of the first payment of $1,800, and the execution by this defendant of the notes sued upon herein; that in October, 1909, defendant, acting by T. C. Thomas, let the contract for the drilling of a well on said land, and in November, 1909, the well was completed; that in January, 1910, defendant had 35 acres of land cleared and ready for water, but, part of same being above the level of the well, it became necessary to pipe the water to the higher ground, a distance of 400 feet, and the water was turned into said pipe line in the latter part of February, and by March 1, 1910, the flow was so weak that the 4-inch pipe was only two-fifths full where it discharged into the ditch; that by the last of April, 1910, the well flowed so poorly that irrigation had to be aban-

doned on all but 35 acres of land, and on July 1, 1910, the well had ceased to flow through the pipe line, and that summer it entirely ceased to flow. Defendant further alleged that he had spent various sums in developing and improving the land, the items aggregating $4,407, and had paid interest on deferred payments of purchase money, $336, also interest on amount due for drilling well, $52.80, and had lost a feed crop on 20 acres of land, to his damage $100; also that his time and labor for one year was worth $600, and that he still owed $660 for the drilling of the well; that said expenditures were made and obligations incurred before defendant had knowledge of the fraud on the part of the plaintiffs. Defendant further alleged that, if said representations were not fraudulent, then that plaintiffs believed the water supply was adequate and permanent, and the contract was entered into under a mistake of fact material to the transaction under which all parties were laboring. Defendant, further, by verified plea, alleged that the abundance and permanency of the flow of water in the well to be drilled upon said land was the material part of the contract for the sale of said land and of the contract represented by the deed thereto, and was a material part of the consideration, and the failure of the flow of water was a material failure of consideration; that the falsity of the representations was not discovered by the defendant or his agent until after the delivery of the deed and execution of the notes, such failure not being brought to their notice until the fall of the year 1911. Defendant prayed that plaintiffs take nothing by their suit; that the sale be rescinded, the notes canceled, and that he recover of plaintiffs his damages by reason of expenditures, improvements etc., and, in the alternative, for his damages, should the remedy of rescission be denied him. He tendered a reconveyance of the land.

Plaintiffs filed a supplemental petition containing a general demurrer to the answer, various special exceptions, a general denial, and a special plea as follows: That, if they ever made a contract as alleged by defendant, the defendant accepted a deed under and by virtue of the terms of the contract. after he had satisfied himself that plaintiffs had carried out their part of the agreement, and that he expressed himself as satisfied, and is estopped to deny that plaintiffs carried out their agreement; that, at the time the well came in, they were ready to abide by their contract and repay to defendant his earnest money and the costs of the well, if the well was not satisfactory, but defendant was highly pleased with the well, and thereupon the land was conveyed to him and the notes executed, whereby defendant estopped himself from denying that plaintiffs had complied with their contract, and he thereby waived any action for breach of contract or

warranty; further, that defendant was guilty of laches in failing to complain of the alleged fraud until this suit was filed.

Defendant filed a trial amendment, alleging that, when the contract before referred to was read, said T. C. Thomas and C. A. Luckenbach discovered that a material stipulation agreed upon by the parties had been omitted; that both parties, believing that such stipulation could be ingrafted upon and added to the contract, and being advised by the attorney who drew the contract that, when so ingrafted upon and added to the contract, the same would be a binding part of the contract, and both parties believing such to be the effect thereof, in order to avoid rewriting the contract, again agreed to such stipulation in the presence of the subscribing witnesses to said contract; that defendant would not have signed the contract had it not been for such belief; that the stipulation so agreed to was that plaintiffs guaranteed the flow of the water from the well in question to be adequate to irrigate the entire tract purchased, and that same would continue to flow an adequate stream for ten years from the date of said contract. Wherefore defendant prayed that effect be given to the agreement as actually entered into by the parties.

Plaintiffs filed three exceptions to the trial amendment, and denied all the allegations thereof.

The trial resulted in a verdict and judgment granting defendant a rescission of the sale and a cancellation of the notes, also a recovery upon his cross-action for damages in the sum of $2,896, of which $660 was to be applied to paying the balance due for drilling the well. Plaintiffs appealed.

Appellants have briefed a large number of assignments of error, many of which present, in different ways, the same questions of law, and we shall not undertake to discuss them in regular order. It will be noted from our statement of the pleadings that, while the petition contains averments sufficient to constitute allegations that fraudulent representations induced the acceptance of the deed and execution of the notes, defendant relying upon the representations which induced the execution of the preliminary contract as sufficient to set aside the general warranty deed and notes, dated November 19, 1909, but, in fact delivered five months after the execution of the contract of sale, it is further alleged in a general way that a verbal guaranty was made by plaintiffs to the effect that a flowing well could be obtained on the land sold, which, for all time to come, would furnish ample water to irrigate all of said land, and that such guaranty induced the purchase by defendant of the land described in plaintiffs' petition. However, on the third day of the trial, defendant filed a trial amendment, alleging that such guaranty was only for ten years, and that it was omitted from the written contract, dated September 20, 1909, on account of a mutual mistake of law.

[1] The contract sued upon by plaintiffs was evidenced by the deed and notes described in plaintiffs' petition, which evidenced a completed written contract. Earle v. Marx, 80 Tex. 42, 15 S. W. 595. The deed and notes constituted the final contract between the parties, into which all previous negotiations and agreements became merged. Milliken v. Callahan Co., 69 Tex. 214, 6 S. W. 681; Johnson v. Clarkson, 30 S. W. 71; Walker v. Brosius, 90 S. W. 655; Shenandoah Valley R. Co. v. Dunlop, 86 Va. 346, 10 S. E. 239.

[2] Appellee sought to resist the payment of the notes and the foreclosure of the lien retained by the deed, and his defenses, if he has any, should be directed at the contract evidenced by such instruments. The trial amendment contains no allegation that said verbal guaranty was omitted from the deed by any mistake of law or fact, and it would be difficult to maintain such a contention, in view of the fact that five months intervened between the execution of the contract of sale and the delivery of the deed. The court should have required defendants to direct their pleadings at the deed and notes, and therefore should not have considered the trial amendment as sufficient to allege any defense. Plaintiffs had filed a special exception to defendant's second amended answer, seeking to have the court require defendant to elect whether he sued for damages on the contract of September 20, 1909, or the contract evidenced by the deed, which exception was overruled, the court doubtless considering the allegations of fraud with respect to the contract as going to the deed also, because it was alleged that such fraud was not discovered until after the deed was delivered, and inferentially that it induced the acceptance of the deed and execution of the notes. In this, we think, there was no error, and assignment of error No. 40 is overruled. Plaintiffs did not demur generally to the trial amendment, nor except on the ground that it alleged no defense to the contract evidenced by the deed and notes, but did except on the ground that it sought to vary the terms of a written contract by parol, and that it was in contravention of the statute of frauds, in that it sought to set up and assert a verbal warranty extending for more than one year.

[3] Had it been pleaded that such guaranty was omitted from the deed, in the absence of fraud, accident, or mistake, the deed could not be reformed so as to include such guaranty therein, because it would vary the same in a material manner. Earle v. Marx, supra; Lynch v. Ortlieb, 70 Tex. 730, 8 S. W. 575; Belcher v. Mulhall, 57 Tex. 20; Rubrecht v. Powers, 1 Tex. Civ. App. 282, 21 S. W. 318; Weaver v. City of Gainesville, 1 Tex. Civ. App. 286, 21 S. W. 317; Willis & Bro. v. Byars, 2 Tex. Civ. App. 134, 21 S. W. 320; Loonie v. Tillman, 3 Tex. Civ. App. 334, 22 S. W. 524; Kansas City Packing Box Co. v. Spies, 109 S. W. 432; Beard v. Gooch, 130

S. W. 1022; Byars v. Byars, 11 Tex. Civ. App. 565, 32 S. W. 925.

[4] If it be considered that the guaranty was a part of the consideration for the notes, it is a contractual one, and therefore cannot be proved by parol. Coverdill v. Seymour, 94 Tex. 8, 57 S. W. 37; Boone v. Mierow, 33 Tex. Civ. App. 295, 76 S. W. 772; Finn v. Krut, 13 Tex. Civ. App. 36, 34 S. W. 1013; Southern Building Ass'n v. Winans, 24 Tex. Civ. App. 544, 60 S. W. 827.

[5] Defendant alleged that, when the contract was read, both parties discovered that the guaranty had been omitted, but both of them, believing that the guaranty could be ingrafted upon the instrument by parol, and being so advised by the scrivener, in order to avoid rewriting the instrument, again agreed upon such guaranty. It is not contended that any mistake was made as to the terms of the written agreement, or the legal effect thereof. Both parties knew exactly what it contained, and its legal effect, but it is alleged that they made a mistake of law in believing that the verbal guaranty would be binding. The question, then, is whether an agreement shall be binding and enforceable in law because both parties believe it to be binding and enforceable, when neither party was misled by the other, or by the intentional misrepresentation of an attorney. We think, in such a case, the mistake of law cannot be invoked to reform or rescind the written contract. To permit it would be to open the gates for interminable litigation, and to practically repeal the statute of frauds. When parties are making a written contract, which is read over, and they discover that an important clause is omitted, no excuse should be received as to why such clause is not inserted therein, and we may say further that, if appellee's contention be true, he was grossly negligent in not having the few words interlined in the contract which would express the provision that plaintiffs were to guarantee the flow of water therein provided for to be adequate to irrigate all of such land, and to remain adequate for that purpose for ten years. Lott v. Kaiser, 61 Tex. 672; Ins. Co. v. Hill, 127 S. W. 286; Meier v. Kelly, 20 Or. 86, 25 Pac. 74; Pomeroy's Equity Jurisprudence, § 839.

The same rules would apply to the contract of September 20, 1909, had no deed been made, and suit been brought on the contract, and therefore we sustain assignments of error Nos. 23 and 24, which complain of the overruling of such exceptions, and also assignment No. 41, which complains of the admission of evidence in support of the plea of a verbal guaranty.

[6] The court, by his charge, authorized the jury to find for a rescission of the sale, if they found that the guaranty set up in the trial amendment was established, and that it had not been complied with. Had such guaranty been embraced in the deed, or a separate written contract of even date with the deed been made to that effect, we fail to see how the failure to comply therewith could be ground for rescission, in the absence of an express agreement to that effect. If it had been embraced in the contract dated September 20, 1909, and the well had failed before delivery of the deed, defendant would have been released from the obligation to take the land, but, after the trade is closed, the deed delivered, and the consideration in money and notes has passed, such a provision, if embraced in the deed, would be a mere warranty, the breach of which would not entitle appellee to rescission, but merely to damages. Jones v. George, 61 Tex. 350, 48 Am. Rep. 280; El Paso & S. W. Ry. Co. v. Eichel & Weikel, 130 S. W. 926; Harroll v. McDuffie, 128 S. W. 1149; Simkins on Contracts, pp. 912, 913. The tenth, twelfth, and thirteenth assignments, which complain of the court's charge which authorized a rescission for breach of the guaranty set up in the trial amendment, are therefore sustained.

[7] Passing to the issue of fraud made by the pleadings, it appears that some matters of fact are alleged, but that much of the plea is based upon representations of permanency of water supply, a matter that defendant could determine, with the facts before him, equally as well as plaintiffs, and, judging by the allegations that a guaranty was required and the testimony that it was exacted, as well as that defendant refused to buy from another agent, because he would not guarantee the supply of water, and defendant's testimony that he had used due prudence to investigate the water supply in that county, it seems clear that defendant did not rely upon any allegations that a permanent water supply could be obtained. Lynch v. Ortlieb, 70 Tex. 727, 8 S. W. 515.

[8] It is alleged by defendant that by the last of April, 1910, the well flowed so poorly that irrigation on all but 35 acres had to be abandoned; that by the latter part of May, 1910, it was necessary to irrigate day and night and Sundays to save the crop; that on July 1, 1910, it ceased to flow through the pipe line; and in the summer of that year entirely ceased to flow. T. C. Thomas, defendant's agent, who bought the land and conducted all business with reference thereto, lived on the land until June, 1910, at which time the water got so low that he left the land and went into the real estate business. He admitted that he knew in July, 1910, that the well was "not any good," and that he had been "buncoed." He paid plaintiffs $336 interest in the fall of 1910, and in December, 1910, conveyed to Paxton 80 acres of the land for $11,200, of which $2,600 was paid by the conveyance of property in Illinois. Upon the advice of his attorney, he sued Paxton, and recovered the land because of Paxton's failure to make payments. He built two tanks, one of which never became filled, because

there was no flow of water after he got it completed. They were completed in September, 1910. Thereafter the reservoirs were connected by piping, which was paid for in November, 1910. His personal labor in improving, harrowing, and developing the land extended over a period of 15 months. He made no complaint until June, 1912, after suit was filed in January, 1912, and did not demand a rescission until he filed his answer; in fact, as late as June, 1911, he wrote letters to plaintiffs stating that he was trying to raise money to pay interest and also to make a payment upon the principal of defendant's notes, and stating that he expected to sell some of the land in Kansas City. This appears to be a clear case of the defendant making an election not to repudiate the sale, as he dealt with the property as his own, after discovery of the fraud, if any fraud existed, and failed to promptly tender reconveyance and demand a rescission. Wells v. Houston, 23 Tex. Civ. App. 653, 57 S. W. 584; Guthrie v. Lyon & Sons, 98 S. W. 432; Railway v. Cade, 100 Tex. 37, 94 S. W. 219; Hallwood Cash Register Co. v. Berry, 35 Tex. Civ. App. 554, 80 S. W. 857; Railway v. Jowers, 110 S. W. 946.

[9] The court, by paragraph 4 of his charge, sought to submit unreasonable delay in complaining of the fraud or of the breach of guaranty as a defense against rescission, but stated that such a finding would not prevent a finding for defendant under paragraphs 5 or 6, if they believed from the evidence that defendant was entitled to recover under either of said paragraphs. Paragraph 5 is to the effect that, if the jury find for a rescission, and therefore find for defendant on plaintiff's cause of action, and find the facts supported and presented in paragraph 2 (which submitted the issue of fraud), then to allow such damages, if any, as were sustained by defendant on account of such fraudulent representations. When paragraphs 4 and 5 are considered together, it occurs to us that the jury could not have understood that unreasonable delay in complaining and repudiating constituted an absolute defense to the action, in so far as rescission was sought. In paragraph 6 the jury is told, in effect, that, if they find against the rescission of the sale and cancellation of notes, and if, nevertheless, they find all the facts supposed and presented for their determination in paragraph 3 (wherein the issue of verbal guarantee was submitted as a ground for rescission), and further find that, by reason of such guaranty and nonfulfillment of guaranty, if any, and of the sale of the land under such guaranty, the defendant sustained any of the injuries or losses complained of in his answer and cross-action, then to find in favor of defendant for such damages as would reasonably compensate him for the injuries or losses sustained by him, in which they may include only the difference in value of the land with

well thereon, if of the character verbally guaranteed, and its actual value, with interest thereon at 6 per cent. per annum from date of contract until time of trial. It was the intention of the court by this paragraph to submit the issue of damages for breach of the verbal guaranty, in the event that, under paragraph 4, the jury found that defendant had lost his right of rescission.

[10] Appellants, by assignment No. 27, object to the charge as a whole, on the ground that it permits the jury to determine whether to rescind the contract or recover damages. So far as the issue of breach of the guaranty is concerned, we have already held that it would not entitle defendant to rescind had it been made a part of the deed. As to the issue of fraud, we need only say that cases frequently arise in which the question whether the party complaining of fraud has repudiated within a reasonable time after discovery of the fraud becomes a question of fact to be determined by a jury, and in such cases the court submits the question whether the facts are such as to show that the remedy of rescission has been lost. Railway v. Cade, 100 Tex. 37, 94 S. W. 219; Railway v. Jowers, 110 S. W. 948.

[11] The court took the view that this case contained such an issue, and it does not appear that appellants challenged the sufficiency of the evidence to raise such issue by asking any peremptory instruction to find against defendant as to his plea for rescission. We therefore cannot sustain said assignment, which, in a general manner, complains of the charge without questioning the sufficiency of the evidence to raise the issues submitted.

[12] Paragraph 6 is attacked on the ground that it submits an erroneous measure of damages; appellant contending that the measure of damages is the difference between the consideration given for the land and the value of the land, citing George v. Hesse, 100 Tex. 44, 93 S. W. 107, 8 L. R. A. (N. S.) 804, 123 Am. St. Rep. 772, 15 Ann. Cas. 456. The rule laid down in that case applies to fraud cases, and not to those for breach of a warranty.

[13] In this case the court failed to submit any measure of damages for fraudulent representations, to be applied if defendant had delayed for an unreasonable time in complaining, or had recognized and approved the sale after knowledge of the fraud, and therefore lost his right of rescission under paragraph 4 of the court's charge. Appellant complains of this omission in the proposition under the seventeenth assignment, but, as the jury found for rescission, we would not reverse the judgment if this was the only error complained of.

[14] Paragraph 5 of the court's charge permits a recovery for all expenditures pleaded by defendant in the event the jury finds defendant entitled to a rescission, and fails to limit the recovery to such items as were in-

curred prior to the discovery of the fraud. This is erroneous. Defendant cannot, after repudiating his purchase, continue to improve the place and recover for such improvements. In his answer, defendant failed to itemize his expenditures by stating when and to whom they were paid. Special exceptions were directed by plaintiffs at the answer on this account, which should have been sustained. Assignment No. 3 complains of such ruling, but we do not think it is briefed so as to merit consideration, and only pass upon same because the case will be reversed on other grounds.

The special charge complained of in the twentieth assignment was erroneous, as pointed out, but we think the jury, in view of the general charge, and of expressions contained in the special charge, were not misled thereby to believe that representations, though true, could be the basis for fraud. The assignment is overruled.

[15] By assignment 42 complaint is made of the court's refusal to permit plaintiffs to prove their general reputation for honesty and fair dealing. Our courts have been very liberal in permitting testimony of general reputation for truth and veracity, where an attack has been made upon parties by showing contradictory statements made by them or by testimony of circumstances constituting an attack upon their credibility. See Houston Electric Co. v. Faroux, 125 S. W. 922, and cases therein cited. It has also been held by this court that, where a party is charged with fraud in procuring an insurance policy upon which he brought suit, and with procuring the property to be burned, his character for truth, honesty, and fair dealing was directly assailed, and it was competent for him to prove that his general reputation for truth, honesty, and fair dealing was good. Fire Ass'n of Philadelphia v. Jones, 40 S. W. 44. Testimony that a boy's reputation for honesty was good was held admissible in a case where he was charged with embezzlement. Largeant v. Beard, 53 S. W. 90. See, also, Word v. Houston Oil Co., 144 S. W. 334; Cudlipp v. Cummings Export Co., 149 S. W. 447. In the case of Roach v. Crume, 41 S. W. 86, it was held, however, that a defendant sued upon a claim that he held land in trust, and who testified he was the sole owner thereof, could not prove his good reputation for honesty and fair dealing. Our courts have been more liberal in permitting such evidence than the weight of authority appears to warrant. See Chamberlayne on the Modern Law of Evidence, §§ 3273, 3281, 3282. We are unwilling to extend the doctrine further, and to apply it in a case where fraud is charged, especially where such charge is not based upon circumstances from which different inferences might be drawn, but it is to be determined by virtue of the credit to be given to the testimony of the witnesses as to whether or not certain statements were made, and whether or not they were true or false. If the party charged with making false representations, even though it is charged that same were made knowingly, can be permitted to strengthen his testimony by proof of his good reputation for honesty, it appears reasonable that the other party, who is sought to be put in the attitude of seeking to unjustly mulct his opponent in damages to which he is bound to know he is not entitled, should also be permitted to bolster his testimony by proof of his good reputation for honesty. Thus a large number of witnesses would be called, and the controversy resolved into one to determine which could establish the best reputation. We overrule the assignment. Chamberlayne Mod. Law of Ev. § 3282; Greenleaf on Ev. § 54; Underhill on Ev. § 10.

The seventh assignment is sustained. The error, however, is one which would not require a reversal.

[16] The thirty-ninth assignment is sustained. The admission made by appellee for the purpose of being permitted to open and close the case was not sufficient. It was not made in the language of rule 31 for the district and county courts, but was carefully limited to an admission of the execution of the notes and liability thereon. Appellee contends no reservation was made, but the very expression he cites in support of his contention, which expression occurs near the end of the admission, is qualified by a reference to the cause of action therein before set out which related merely to the notes. All question of the execution and delivery of the deed, containing the reservation of the vendor's lien, is carefully avoided. It appears that appellee deemed it unwise to admit the truth of the allegation with respect to the execution of the deed, which constituted a portion of the contract sued upon by appellants, and therefore it was still incumbent upon appellants to make such proof in order to establish their cause of action as claimed in their petition. If there be one affirmative fact important to a recovery by plaintiffs not admitted by defendant, plaintiff has the right to open and conclude. Steed v. Petty, 65 Tex. 490; Sanders v. Bridges, 67 Tex. 93, 2 S. W. 663; Dry Goods Co. v. Bank, 31 Tex. Civ. App. 238, 71 S. W. 604; Taylor v. Reynolds, 47 Tex. Civ. App. 344, 105 S. W. 65; Meade v. Logan, 110 S. W. 188; Cockrell v. Ellison, 137 S. W. 150; Ins. Co. v. Baker, 10 Tex. Civ. App. 525, 31 S. W. 1072; Berry Bros. v. Fairbanks, Morse & Co., 51 Tex. Civ. App. 561, 112 S. W. 429; Smith v. Bank, 74 Tex. 541, 12 S. W. 221.

Assignments 6, 8, 9, 10, 21, 22, 25, 30, 31, and 32 are overruled.

The assignments not hereinbefore disposed of will not be considered because not sufficient or not briefed in accordance with the

rules. Most of them relate to matters already discussed, while others relate to questions which will not arise upon another trial.

The judgment is reversed, and the cause remanded.

CARL, J., being of counsel, did not sit in this cause.